[No. 15020.  Department One.  December 28, 1918.]

DEER PARK LUMBER COMPANY, *Respondent*, v. OREGON-
WASHINGTON LUMBER & MANUFACTURING
COMPANY, *Appellant*.[1]

APPEAL (458, 459)—REVIEW—HARMLESS ERROR—FACTS OTHERWISE
ESTABLISHED. The exclusion of a letter is harmless where its con-
tents was brought out on cross-examination.

EVIDENCE (168, 175) — PAROL TO VARY WRITING — PRIOR AGREE-
MENTS—AMBIGUITY. Previous correspondence and evidence of nego-
tiations leading up to a contract for the sale of lumber is not admis-
sible, where there was a complete unambiguous contract by cor-
respondence whereby plaintiff refused to accept defendant's first
order but submitted a confirmation order that was accepted by
defendant, and the previous correspondence could throw no light
on the terms of the agreement made.

SALES (166)—COUNTERCLAIM FOR DAMAGES—INSTRUCTIONS. Upon
an issue as to breach of a contract for the sale of lumber, error
cannot be predicated upon the failure to include a charge that the
obligation to deliver is as great as the obligation to make payment,
where the court properly instructed as to the duty of the seller to
deliver and make performance, and as to the mutuality of the
obligations.

APPEAL (460)—REVIEW — HARMLESS ERROR—INSTRUCTIONS—PREJ-
UDICIAL EFFECT. Error in instructions as to the defendant's measure
of damages on counterclaim for breach of contract, is harmless,
where the jury found for the plaintiff in the exact amount claimed,
thus finding that there was no breach of contract.

Appeal from a judgment of the superior court for
King county, Frater, J., entered June 4, 1918, upon
the verdict of a jury rendered in favor of the plain-
tiff, in an action on contract.  Affirmed.

*McClure & McClure, Tucker & Hyland,* and *Wal-
ter S. Osborn,* for appellant.

*Carroll B. Graves,* for respondent.

TOLMAN, J.—Respondent sued to recover $8,773.50
and interest, a balance alleged to be due to it for lum-

[1]Reported in 177 Pac. 336.

ber sold and delivered to appellant. It was admitted that appellant was entitled to a credit for the amount of the expense bills held by it, and upon their production, the contract price of the lumber delivered was agreed to be $4,458.34. Appellant, by way of defense and counterclaim, set up and sought to prove a breach of a contract to deliver a specified amount and grade of lumber at specified prices within a specified or reasonable time. The case was tried to a jury, which brought in a verdict for the exact agreed contract price of the lumber delivered, upon which verdict judgment was entered, and from which this appeal is taken.

The issues made up under the counterclaim in the answer related to three contracts, one covering western pine shop lumber, or shop lumber, the second covering pine moldings, and the third, number four pine boards. The main controversy was over the shop lumber, and the errors assigned do not appear to extend beyond the proceedings relating thereto.

On March 14, 1917, appellant telegraphed an inquiry to respondent as to prices of shop lumber, and respondent replied by letter of March 15, enclosing a schedule of prices. On receipt of that letter, on March 16 appellant wired an inquiry as to how much and what specifications and grades of shop lumber could be furnished at such prices, in reply to which respondent wrote a letter, dated March 17, which reads as follows:

"We are writing you promptly instead of wiring you regarding our present position to handle your western pine shop orders, because we feel that we cannot make our position sufficiently clear to you in a telegram.

"We have in pile at this time waiting for the stock to air dry, about 750,000 of No. 3 and better shop. This stock is about 70% 6-4, 20% 8-4 and 10% 5-4,

and it will grade about 40% No. 3, 50% No. 2, and 10% No. 1. A large part of this stock was put in pile in January, so it would be beginning to be in shipping condition in May.

"You understand we have been kiln drying part of our shop during the winter, but that which we have been kiln drying we have been shipping out on orders, so the only surplus we have to offer is this 750,000 which we have piled in the yard to air dry. We are adding to this 750,000 every day at the rate of about 10,000 per day. If the orders which you have in mind require more of the 5-4 than we have on hand, we could begin to saw more of the 5-4."

On receipt of this letter, appellant sent a telegram purporting to accept what it termed respondent's offer to sell shop lumber, and followed the telegram with an order dated March 21, as follows:

750,000' or more up to 1,000,000'.

5/4, 6/4 and 8/4 Western Pine factory lumber, bright stock, either air dried or kiln dried.

2,300 lbs.

| About 10% | 5/4 & 6/4 | No. 1 Shop S2S Standard | ............ | $41.00 |
| " 50% | " | No. 2 " " " | ............ | 31.00 |
| " 40% | " | No. 3 " " " | ............ | 26.00 |
| " | 8/4 | No. 1 " " " | ............ | 44.00 |
| " | 8/4 | No. 2 " " " | ............ | 34.00 |
| " | 8/4 | No. 3 " " " | ............ | 27.00 |

Shipments to commence May 1st or sooner if possible to ship absolutely dry stock, confirming our wire March 20th, 1917. Stock to be 70% 6/4; stock to be 20% 8/4; stock to be 10% 5/4.

On receipt of the telegram and before the receipt of the order, respondent wrote a letter under date of March 21, saying, in effect, that when the lumber would be fit to ship depended upon the weather, and they would not agree to ship at any specified time, but would only ship as the lumber reached shipping condition, and

"Also, we do not care to guarantee the percentage of grades which the stock will probably develop. Another feature which is along the line of what we wrote

you the other day, on a contract for a large amount of shop, we would much prefer to invoice direct to the customer, and our doing so in a case of this kind would not result in your sacrificing in any way your identity as a wholesaler, because the dealings would all be with one concern.''

And upon receipt of appellant's proposed order of March 21, respondent immediately wired its refusal to accept the same. Thereupon appellant's manager went to Deer Park and some personal negotiations were had. After all of this correspondence, and after the personal negotiations, the minds of the parties appear to have met, and the trial court instructed the jury that the contract between them was shown by appellant's order of March 21, respondent's confirmation order of March 31, the letter of April 7 transmitting the confirmation order, and appellant's acknowledging letter of April 10. The first of these has already been quoted herein. The confirmation order does not vary therefrom in amounts and prices, but describes the lumber as number three and better, shop pine, as stock runs, to be shipped as soon as possible, terms as per agreement, and requests immediate telegraphic advice if there is any error therein, and the letter of transmissal is as follows:

''Herewith our confirmation of your order No. 1265, which we have entered under our Mill No. 2038, order calling for from 750,000 to 1,000,000 feet of factory lumber, prices on our confirmation being net to us, and terms as per agreement that you are to advance 95 per cent of face of each invoice after deducting freight and that you will make a special effort to forward to us promptly all final remittances.

''It is our understanding on all shipments to you that you are willing to advance us 95 per cent, but I note by a remittance received from you yesterday that you advanced but 85 per cent. We thought we would let this one car pass, but please understand that in

future shipments it will be necessary for us to insist upon your advancing 95 per cent.

"We are several days late in mailing you our confirmation of your order for factory, because orders have been coming in faster than we have been able to write them up and mail back the confirmations."

Appellant's letter of April 10 acknowledges receipt of respondent's letter of April 7, and of the confirmation order enclosed, expresses satisfaction therewith, and says:

"We have instructed our accountant to make you advance payments of ninety-five per cent of the mill value, less two per cent cash discount on regular terms."

Appellant's first contention is that the trial court erred in withdrawing from the consideration of the jury the letter written by respondent under date of March 17. Notwithstanding that the court had instructed that the contract was shown by subsequent letters and documents, counsel for appellant appears to have been commenting on this letter in his argument to the jury, when an objection was interposed and counsel said:

"I am not arguing this as a part of the contract . . . . Not as a part of the contract at all. I don't contend it is a part of the contract. It is a statement of fact though as to what they had on hand in that yard at that time, and presumably should be correct if Mr. Wilson was truthful in his letter. It is his letter, not our letter. It is one of those letters which goes in this correspondence as throwing light upon the bona fideness of this transaction and gives you some understanding as to who breached this contract."

Assuming, therefore, that the letter was a statement or admission by respondent against interest as to the grade of the shop lumber in its yard, was appellant

prejudiced by its exclusion. On cross-examination of the secretary of respondent, who wrote the letter, the following took place:

"Q. So that your lumber piled in your yard or in your dry kiln you know from your experience, if you are an experienced lumberman, on an average how your stock will run unless you have had extraordinary climatic conditions, do you not? A. We couldn't any more than guess at it. Q. Can you tell within a reasonable percentage how your stock is running, and can't any other lumberman tell within three or four per cent? A. I have always felt that I knew so little about it that I wouldn't take an order and guarantee anything about percentages, that is how much I know about it? Q. I didn't ask you what you would guarantee. You don't know enough about it to express an opinion now and again? A. An opinion, yes, but I wouldn't take an order on that basis. Q. And when you wrote this letter on March 17th to the Oregon-Washington Company and said, 'We have in pile, waiting for the stock to air dry about 750,000 feet of No. 3 and better shop. This stock is about 70 per cent 6-4, 20 per cent 8-4 and 10 per cent 5-4 and it will grade about 40 per cent No. 3, 50 per cent No. 2, and 10 per cent No. 1,' was only the expression of an opinion, and simply a guess as to what was in your lumber pile? A. That is correct. Q. And you didn't intend it to be anything but a guess? A. Certainly not. Q. And you intended that the Oregon-Washington people should take that just as a guess? A. Certainly, they understood it that way."

It appears, therefore, that the contents of the letter were fully made known to the jury, and appellant had the full benefit thereof. While, with a proper caution to consider it only for the purpose indicated by counsel, the letter might have been admitted, yet we cannot say, in the light of the cross-examination referred to, that its exclusion was prejudicial error.

It is also contended that the instructions as to what

communications constituted the contract between the parties was erroneous, and it may be conceded that, when the contract is ambiguous, the statements and communications of the parties leading up to it may be received in evidence for the purpose of aiding to determine what the contract is. But a complete and unambiguous contract merges all prior communications and negotiations within itself and requires no explanation. For instance, in its order appellant asked respondent to contract to ship lumber which should be 10 per cent No. 1, 50 per cent No. 2, and 40 per cent No. 3. Had respondent accepted the order as made, there would have been a contract without ambiguity. Respondent, however, declined to accept the order as made, notified appellant that it would not guarantee percentages of grades, and in its confirmation order provided that the percentages should be as the stock ran. And appellant having accepted the confirmation order, that became the contract. The previous correspondence could throw no light upon the meaning of the words "as stock runs," and, so far as we can gather from the record, there is no dispute of the fact that these words mean exactly what they imply, and clearly and expressly negative the idea that the percentages were fixed and guaranteed. Hence the previous correspondence, while it may have been confusing and misleading, could not have aided the jury in determining what the contract really was.

It is next contended that the jury was not properly instructed with regard to the breach of the contract, errors being assigned both on the instructions given and those refused. It is argued that the instructions given fail to include a charge that the obligation to deliver on the part of the seller is as great as that of the buyer to make payment, and that failure on the part of respondent to make proper delivery would ex-

cuse subsequent default in payment by the buyer. But we think the jury could not have been misled in that respect. The court clearly pointed out in the instructions given that the respondent must have been at all times ready and willing to perform its part of the contract, and only the appellant's failure to perform on its part would excuse such performance, and further, that the party who had first breached the contract had no cause of complaint against the other for its failure to further comply with the contract. The jury could only conclude from these instructions that the obligations of the contract were mutual and as binding upon one party as the other, and must have further concluded that, if respondent had first breached the contract, it could not thereafter justify such breach by complaining of appellant's subsequent failure to pay. We think these instructions as a whole sufficiently stated the law.

Appellant appears to place great reliance upon its assignments of error based upon the instructions given and refused as to the measure of damages. Assuming that the court did err in this respect, can such error now be of any importance whatever? Had the jury found that respondent breached the contract, some damages would have resulted to appellant, even under the instructions as given, and must have been reflected in the verdict. The jury, however, found a verdict for the exact sum which it had been agreed was the purchase price of the lumber delivered, and must therefore have accepted respondent's theory of the case, have found that it did not breach the contract, and that, therefore, appellant did breach the contract, and, if so, of course, it would be entitled to recover or offset nothing, no matter what rule might have been given to the jury as to the measure of damages. Erroneous instructions as to the measure of

damages are not ground for reversal where the jury rejected the whole claim for damages. *Catton v. Dexter,* 70 Ill. App. 586; *Hamilton v. Matlock,* 22 Ind. 47.

Finding no reversible error, the judgment appealed from will be affirmed.

MAIN, C. J., MACKINTOSH, CHADWICK, and MITCHELL, JJ., concur.