## MANN et al. v. BRADY.

No. 9944—Opinion Filed March 8, 1921.

(Syllabus by the Court.)

**1. Indians—Brokers—Contract for Sale of Restricted Lands—Validity.**

A contract between a Creek Indian and a real estate agent whereby the real estate agent is employed as an agent or broker to find a purchaser for a given number of acres of land at a stipulated price per acre, which land is described in said contract and the lands so described include a part of his allotment the alienation of which is restricted by act of Congress in force at the time of making the contract, is void.

**2. Same.**

Such Indian cannot make a valid contract for the personal services of a real estate agent to find a purchaser for his lands where any part of his restricted lands is included in the contract. Held, that a real estate agent cannot maintain an action on such a contract.

**3. Contracts—Entire and Severable Contracts—Brokers.**

A written contract with a real estate agent to procure a purchaser for a given number of acres of land at a stipulated price per acre is not a severable contract; it having but one object in view, to wit, the sale of the given number of acres of land at the stipulated price.

**4. Contracts — Construction — Writings — Parol Evidence.**

Where the terms of a written contract are plain and simple, the language is such as to clearly show the intent of the parties thereto, there is no need to apply any technical rules of construction, for where there is no doubt, there is no room for construction, and parol testimony is not admissible as an aid to show the intent of the parties.

Error from District Court, Wagoner County; Chas. G. Watts, Judge.

Action by R. F. Mann and another against Foil M. Brady to recover a real estate agent's commission under a contract giving the plaintiffs a 90-day option to sell certain lands belonging to defendant which included his restricted homestead. Defendant's demurrer to the petition was sustained, action dismissed, judgment in favor of defendant, and plaintiffs appeal. Affirmed.

E. A. Summers, for plaintiffs in error.

John C. Graves, for defendant in error.

MILLER, J. This action was commenced in the district court of Wagoner county by

R. F. Mann and J. T. Hall, plaintiffs in error. hereinafter called plaintiffs, against Foil M. Brady, defendant in error, hereinafter called defendant, to recover the sum of $1,262.50 for their commission as real estate agents for the sale of certain lands described in a written contract. which reads as follows:

."This contract made and entered into this the 17th day of April, 1917, by and between Foil M. Brady, party of the first part, and J. T. Hall and R. F. Mann, parties of the second part, witnesseth that party of the first part for and in consideration of $1.00 and other good and valuable considerations do hereby give. grant and set over to the parties of the second part an exclusive option for ninety days from date to sell the following described lands, to wit:

"N.W.¼ and N.½ of S.W.¼, and S.E.¼ of S.W.¼ of Section 13, and S.E.¼ of N.E.¼, and N.E.¼ of S.E.¼ of Section 14, Township 17 North, Range 17 East; and N.W.¼ of N.W.¼ of Section 19, Township 17 North, Range 18 East, of the Indian Meridian, Wagoner county, state of Oklahoma.

"It is agreed that said lands shall be sold for $27.50 per acre, net to party of the first part and that all over and above said amount to be for commission to parties of the second part for services in selling same. It is agreed further that the sale shall be closed through the First National Bank of Wagoner, Oklahoma. It is agreed that in case sale is made the party of the first part shall furnish a good warranty deed and abstract to be turned over to purchasers when purchaser shall deposit the purchase price of the above lands to the credit of the first party in said bank. It is further agreed that party of the first part shall sell same clear of liens and taxes or same to be deducted from the purchase price of said lands.

"Witness our hands this the day and year first above written.

· "Foil M. Brady, Party of the First Part.

"J. T. Hall, R. F. Mann, Parties of the Second Part."

The parties to the above contract acknowledged their execution of it before a notary public in due and legal form.

The original petition, filed by the plaintiffs, states that plaintiffs found a purchaser "ready, able and willing" to buy the land within the time specified in the contract, and at an agreed price of $30.50 per acre, which under the contract would amount to a commission of $3 per acre or $1,200, the amount of the commission claimed, and in addition to such commission is added $62.50 alleged to have been paid by plaintiffs for an abstract to the property described in the contract. Said petition further states that the

N.E.¼ of section 13-17-17 was the homestead allotment of the said defendant, Foil M. Brady; that said Brady was enrolled as a Creek Indian of the half-blood, and the said homestead of 40 acres therein described is therefore under restrictions.

An amended petition was afterwards filed in which the plaintiffs allege that it was part of the agreement that the defendant, Brady, was to procure a removal of his restrictions whereby he could sell the said homestead 40 acres, and that it was his duty so to do.

To the said petition and amended petition a general demurrer was filed by defendant, which demurrer was by the court sustained. Thereafter a second amended petition was filed, which said second amended petition did not change the issues, except it omitted to state that the defendant, Foil M. Brady, was a Creek Indian of the half-blood, and that 40 acres of this land is his homestead allotment and under restrictions. It does state that "if defendant is unable to make a good title to any part of said land, they are willing to accept so much as he is able to make title thereto, and waive any other claims they may have by reason of the facts set out herein."

To this second amended petition defendant filed a motion to strike, which motion was sustained by the court and judgment rendered dismissing the action, exceptions saved, notice given in open court of the plaintiffs' intention to appeal to the Supreme Court, and this appeal perfected.

The plaintiffs complain of the ruling of the court in sustaining the demurrer, sustaining the motion to strike, and rendering judgment dismissing the action. They make three contentions:

(1) That the contract is valid and binding notwithstanding it provides for the sale of restricted Indian land.

(2) That if it would not be binding as to the 40-acre homestead, it is a severable contract on its face.

(3) That if it is not severable on its face, it is subject to parol testimony to show that it was the intention of the parties that the defendant should procure the removal of his restrictions, and on his failure so to do, they would be entitled to the commission on whatever acreage he could convey.

With these contentions we do not agree.

Referring to plaintiffs' first contention: A contract made by a Creek Indian for the sale of his restricted land is void and cannot be enforced. The policy of the government is to exercise a protecting control over the Indian and his lands, and any contract made in

disregard of that policy which cannot be carried to full fruition because of such governmental protection is void.

But counsel for plaintiffs in error insists that this is an agent's or broker's contract to find a purchaser for real estate for a commission, and that these decisions apply:

"In the case of Pape v. Wright, 19 N. E., at page 460, the Supreme Court of Indiana has most extensively discussed this very question. In that case the plaintiff had been employed to procure a purchaser for certain patent rights under circumstances under which the owner violated the law in making the sale or offering to sell. In discussing the rights of broker, the court said:

"'He was acting as a broker, and as such was entitled to his commission when he furnished a purchaser, whether a sale was consummated or not. Brokers who undertake to find purchasers earn their commission when they bring to their principal a person willing and ready to buy. Love v. Miller, 53 Ind. 294; Vinton v. Baldwin, 88 Ind. 104, and cases cited: Fischer v. Bell, 91 Ind. 243; McClare v. Paine, 49 N. Y. 561.

"'The question is not whether it was illegal to sell or offer to sell patented rights, but whether it was illegal for the broker to attempt to find a purchaser; for, as the pleadings present the facts, the broker was not authorized to make a sale, nor was he requested to sell. All that he was engaged to do was to procure some one to buy. He was not, therefore, an agent authorized to sell, but was what the authorities denominate a "middleman." Alexander v. University, 57 Ind. 466; Vinton v. Baldwin, supra; Redfield v. Tegg, 38 N. Y. 212; Rowe v. Stevens, 53 N. Y. 621; Rupp v. Sampson, 16 Gray, 398; Barry v. Schmidt, 15 N. W. Rep. 24.

"'The office of a middleman is to bring the parties together, leaving to them the consummation of the sale, and he does not sell, or offer to sell, but simply sets in train preliminary negotiations. If a middleman is entitled to compensation when he procures a purchaser, then he can enforce his contract, notwithstanding the fact that his employer violated the law, for its enforcement does not require that he shall bring to his assistance the illegal contract of selling or offering to sell patented articles. The rule upon the general subject is that a recovery may be adjudged whenever it can be reached without the aid of an illegal contract. Louisville, etc., v. Buck, ante, 453 (this term); Sandheim v. Gilbert, 18 N. E. Rep. 687 (this term).'"

Counsel cites other authorities along the same line as those above referred to, but these authorities are not applicable to the case before us. This was an entire and indivisible contract made in total disregard of the policy of the government of the United States in dealing with the Indians as wards of the government.

The government has taken the attitude of a guardian to protect the Indian in the possession of the lands allotted to him. This was done on the theory that the Indian was not the equal of the white man in handling business and financial affairs and that he would be the easy prey of the white man. This guardianship control is very much in the nature of a guardianship over a person who is a minor and incapable of handling his own financial and business affairs. This being the policy of the government, he who deals with the Indian and disregards that policy does so at his peril.

If the contract were between two parties of supposed equal mental attainment and business sagacity, where no law restricted them in their right to contract, except the law applicable to all mankind, then a different rule of law would apply. But where an Indian who is under the guardianship control of the government and because of his lack of business sagacity the government establishes a policy of protecting him, a court of justice should be imbued with the full spirit of that policy and refuse its aid in the enforcement of a contract made in total disregard of such policy.

It would be folly to find a purchaser ready, able, and willing to buy the land of an Indian when the government had already decreed by its restrictions that the land could not be alienated. A contract, for a real estate agent's commission, made with an Indian, to find a purchaser to buy any part of his restricted lands, is in violation of the policy of the government in dealing with the Indians and cannot be enforced.

"Those contracts are unlawful which are: First, contrary to an express provision of law; second, contrary to the policy of express law, though not expressly prohibited." Section 972 of the Revised Laws of Oklahoma, 1910.

"By Act of Cong. June 28, 1898, c. 517, para. 29, 30 Stat. 507, it is provided: 'That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale heretofore provided, shall be null and void.'" Lewis et al. v. Clements, 21 Okla. 167, 95 Pac. 769; Light v. Conover, 10 Okla. 732, 63 Pac. 966; Kelly v. Courter et al., 1 Okla. 277, 30 Pac. 372.

We quote from Garst v. Love, 6 Okla. 46, 55 Pac. 19:

"The question presented resolves itself into the plain and distinct proposition: Can a person or an association of persons fence in and enclose a large body of government land, by a post and wire fence, and exclude other persons therefrom, and make a contract with a person, who is so excluded, for the pasturage of cattle in such enclosure

upon government land, and enforce in a court of law and equity the payment of money for such pasturage?

"Section 1 of the act of Congress of February 25, 1885, in the Supplement of the Revised Statutes, vol. 1, page 477, an act to prevent the unlawful occupancy of the public lands, provides:

" 'That all enclosures of any public lands in any state or territory of the United States, heretofore or hereafter to be made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the enclosure the person, party, association, or corporation making or controlling the enclosure, had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such enclosure is hereby forbidden and prohibited.

" 'And the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States, in any state or any of the territories of the United States, without claim, color of title, or asserted right as above specified as to enclosure, is likewise declared unlawful, and hereby prohibited.' * * *

"Can, then, a person who is maintaining this breach both of the civil and criminal laws of the United States, come into a court of equity and ask that a contract that he has made with another for the use of such prohibited enclosure be enforced, and receive an affirmative answer? Our answer must be, directly and plainly, no. You are maintaining an enclosure which is prohibited by law, and a court of equity will not aid you in enforcing any contract which assists you in maintaining or deriving profit from this unlawful transaction.

"It is insisted, however, in behalf of defendant in error, that it is only the maintaining the fence that is prohibited. That while that may be illegal, the pasturing of cattle on the government lands is not illegal, and as the legal part of the contract can be separated from the illegal, the legal part can be enforced. While there is a principle of law that where two independent and distinct considerations enter into a contract which is not illegal in itself, one of which considerations is legal and the other of which is illegal, and where the same can be distinctly and clearly separated, the contract will be enforced; yet the argument of defendants in error cannot be sustained, for this abstract principle is not applicable to the case at bar. Here the consideration for the payment of the price sought to be recovered was the pasturage of cattle in the enclosure of the plaintiffs. The contract con-

templated the turning of the cattle into this inclosure, the feeding them there upon the grass grown by nature upon the government lands, and the keeping of the cattle within this inclosure, and, as is alleged in substance in the answer, the keeping of other cattle, for which payment was not made, off of this part of the government domain, and out of this pasture. The use of the enclosure, the use of the government land for grazing, and the keeping of the cattle in that pasture were the component parts of the consideration, and each and every one was illegal, because the primary one, the maintenance of the enclosure, and the consequent 'unlawful occupance of the public lands' was unlawful. It is true that we know of no statute that makes it illegal for one person to contract with another for the grazing of cattle upon the public domain, but it is illegal to maintain an enclosure and thus keep a pasture upon the public domain. And the pasturing of these cattle, in the manner provided by the contract of the parties, so clearly contemplated the use in this business of the unlawful enclosure of the public lands, that, although the caring for and the keeping of the cattle upon the public domain might be lawful, these things, coupled with the agreement that they be done in this unlawful enclosure, make the entire contract illegal and void, for the legal cannot be separated from the illegal. This conclusion is amply supported by authority.

"The case of Widoe v. Webb, 20 Ohio State, 431, was a suit upon a promissory note, given in settlement of an account, part of the items of which were for intoxicating liquors, sold by the payee of the note to the maker, to be drunk upon the premises where sold, in violation of the statute; the trial court instructed the jury: 'That, if any of the items for spirituous liquors thus illegally sold entered into and formed part of the consideration of the note, then the plaintiff could not recover; the law being that when any part of the entire consideration of a promise is illegal the whole contract is void.'

"Concerning the question then before the court, the opinion states: 'The concurrent doctrine of the text-books on the law of contracts is, that if one of two considerations of a promise be void merely, the other will support the promise; but that if one of two considerations be unlawful, the promise is void. When, however, for a legal consideration a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest, it will be rejected, and the remainder established. But this cannot be done when one of two or more considerations is unlawful, whether the promise be to do one lawful act, or two or more acts, part of which are unlawful; because the whole consideration is the basis of the whole promise. The parts are inseparable. (Metcalf on Con-

tracts, 246; Addison on Contracts, 905; Chitty on Contracts, 730; 1 Parsons on Contracts, 456; 1 Parsons on Notes and Bills, 217; Story on Promissory Notes, 190; Byles on Bills, 111; Chitty on Bills, 94.) Whilst a partial want or failure of consideration avoids a bill or note only pro tanto, illegality in respect to a part of the consideration avoids it in toto.'

"In the case of McQuade v. Rosecrans, 36 Ohio St. 442, the court used this language in approving the former decision: 'Where a part of the consideration, whether large or small, is affected with the fraud, the case falls within the operation of the principle stated and affirmed in Widoe v. Webb, 20 Ohio St. 431.'

"The case of Meguire v. Corwine, 101 U. S. 108, is a very interesting one to consider in connection with this question. There the suit was to recover upon a contract whereby the defendant's testator had agreed that in consideration of the services of the plaintiff in procuring his, the testator's appointment as special counsel in certain causes against the United States, and in aiding him in managing the defense of them, the testator agreed to pay plaintiff one-half of the fee he should receive from the government, and the Supreme Court, while recognizing the validity of an honest claim for attorney's services, but denying the right to recover for such services when they were connected with a contract to pay compensation for procuring the appointment as counsel for the government, such contract being against public policy and void, by Mr. Justice Swayne, who wrote the opinion in the case then before the court, and quoted from his own language used in Trist v. Child. 21 Wallace, 441, said: 'But they are blended and confused with those which are forbidden; the whole is a unit, and indivisible. That which is bad destroys that which is good, and they perish together. * * * Where the taint exists, it affects fatally in all its parts, the entire body of the contract. In all such cases potior conditio defendentis. Where there is turpitude, the law will help neither party.'

"The case of Trist v. Child was one brought by Child against Trist, and recovery had in the trial court, but reversed, and the cause dismissed by the Supreme Court, upon a claim for compensation for professional services in prosecuting a claim before congress as the agent and attorney for Trist. The Supreme Court recognized the validity of a contract for compensation for attorney's fees in such cases, but held that where the same was connected with services as lobbyist, the taint of the latter services affected the entire transaction, and made it all illegal, so that no compensation whatever could be recovered. That is exactly the situation here. While a contract to keep and care for cattle on government land would not be illegal, where the same was done in a prohibited enclosure it would make the entire transaction illegal.

"Another case in point is that of Bixby v. Moore, 51 New Hampshire, 402, where it is held that one cannot recover anything on a quantum meruit for an entire service, where a small part of his labor consists in selling liquor contrary to law.

"On this question Lawson, in his work on Contracts, says: 'If any part of a single consideration for one or more promises is illegal, the whole agreement is void, for public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal.' (Sec. 340.)

"Bishop on Contracts, sec. 471, uses this language: 'A contract illegal in part and legal as to the residue, is void as to all, when the two parts cannot be separated; when they can be, the good will stand and the rest fall. One entire consideration cannot, within this rule, be separated, though composed of distinct items, some which are legal and others illegal.'

"Where a contract is based upon several considerations, one of which is illegal, the entire contract is void, whether the illegality be by common law or by statute." (Chitty on Contracts, page 730.)

"A party to an illegal contract cannot as a general rule have the contract specifically enforced." Sayer v. Brown (Ind. Ter.) 104 S. W. 877.

"That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale hereinbefore provided, shall be null and void." U. S. Statutes at Large, vol. 30, chap. 517, p. 507.

"In the Roman law it was declared that 'A promise made to effect a base purpose, as to commit homicide or sacrilege, is not binding.' Just. Inst. lib. 3, tit. xix., par. 24. In our jurisprudence a contract may be illegal and void because it is contrary to a constitution or statute, or inconsistent with sound policy and good morals. Lord Mansfield said: 'Many contracts which are not against morality, are still void as being against the maxims of sound policy.' Jones v. Randall, 1 Cowp. 39.

"It is a rule of the common law of universal application, that where a contract express or implied is tainted with either of the vices last named, as to the consideration or the thing to be done, no alleged right found upon it can be enforced in a court of justice." Trist v. Child, 21 Wall. 441, 22 L. Ed. 623.

"Where an act is absolutely prohibited by statute or is contrary to the public policy of the state, all notes or contracts given in furtherance of said act are null and void." Williams v. Turnbull, 65 Oklahoma, 162 Pac. 770.

"The plaintiff further contends that, even though the agreement was void, so far as it relates to creating a liability against the city, that clause of the contract which provides that on failure of the city to comply with

the contract 'the property mentioned therein should remain the property of Fairbanks, Morse & Co., with the right to take possession and remove the same,' is a separate and valid agreement, and, therefore, not being tainted with an attempted violation of the statutes, may be enforced. We cannot give our consent to that view of the contract. To our mind this is a single contract, for a single object, for a single consideration, and comes clearly within the meaning of sections 928 and 929, Rev. Laws 1910, which provide: '928. The consideration of a contract must be lawful. 929. If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.'

"This case involves a single contract for the single consideration of $2,400, paid part in cash, part in property, and part to be paid in deferred payments. For this consideration the plaintiff sold to the defendant the property involved, with the further agreement that, in case defendant failed to pay the balance at the times stipulated the plaintiff had the right to retake the property. That last provision was an imporant part of the consideration. Just how much it affected the price paid or influenced the minds of the parties, or either of them, cannot now be estimated, but it certainly had its influence." Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 Pac. 720.

In this Fairbanks-Morse Case there is a very exhaustive list of authorities cited, supporting the above principle.

"Where the consideration of a contract is in part illegal, the courts, as a general rule, will not determine how much of the consideration is based on the illegal consideration, and enforce the contract as to the balance; but the whole contract will be deemed illegal, and enforcement thereof wholly refused." Chicago, I. & L. Ry. Co. v. Southern Indiana Ry. Co. (Ind.) 70 N. E. 843.

"A contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void." Swanger v. Mayberry et al., 59 Cal. 91.

The question of a person's right to recover on a contract to do a thing in violation of either the common law or direct statute, or the full accomplishment of which would be a violation of such law or statute, has been before the courts almost since the institution of the common law.

This question was before the Supreme Judicial Court of Massachusetts in 1821, in the case of Wheeler v. Russell, 17 Mass. Rep. 258, in which many ancient authorities were cited by the court:

"By the 3d and 4th sections of the statute of 1783, c. 15, the sale of shingles, either not of the statute dimensions, or, if not surveyed, of whatever dimensions, is expressly prohibited, and, in each case, under the penalty of forfeiture; and by the 5th section, both seller and buyer are made liable to a pecuniary penalty, if sold without being surveyed.

"The shingles, for which the note in the case at bar was given, neither had been surveyed, nor were of the statute dimensions; and the consideration of the note, therefore, being a sale prohibited by law, the note itself, as between the immediate parties to it, is illegal and void.

"The general rule seems to be this, that where the undertaking, upon which the plaintiff relies, was either upon an unlawful consideration, or to do an unlawful act, the contract is void; and this whether the contract be illegal, as being against the rules of the common law, or the express provisions or general policy of any particular statute. The party claiming under such a contract is not to be assisted, since the law will never lend its aid to enforce a contract which the law has forbidden."

"Thus, as to contracts illegal at the common law, where two boxed for a wager, on assumpsit by the winner, it was held that the action could not be maintained. Webb v. Bishop, 1 Esp. Dig. 88.

"So a sale of the command of a ship employed in the E. I. Company's service being illegal, it was held that no action could be maintained on the contract of sale. Lord Kenyon. 'A plaintiff, who comes into a court of justice to enforce a contract, must come on legal grounds; and if he have not a legal title, he cannot succeed, whatever the private wishes of the court may be.' Ashurst, J. 'It is a clear rule of law, that no right of action can spring out of an illegal contract.' Blachford v. Preston, 8 D. & E. 89. * * *

"Thus an inhabitant of Guernsey cannot recover the price of goods sold by him there, if he knew it to be the buyer's intention to smuggle them into England, and gave him assistance for that purpose. Grose, J. 'If a Guernsey man collude with a person living here, to defeat the laws of this country, he shall not call in aid the laws of this country.' Clugas v. Penalum, 5 D. & E. 466. * * *

"It being contrary to Stat. 7 & 8 W. III. for a candidate to furnish provisions to any voters after the test of the writ, an innkeeper cannot recover against a candidate for provisions so furnished at his request. Eyre, J. 'How shall an action be maintained on that which is a direct violation of a public law?' Ribbans v. Cricket, 1 B. & P. 264. * * *

"In Russell v. De Grand, 15 Mass. Rep. 39, the present Chief Justice said: 'The rule of law is of universal operation, that none shall, by the aid of a court of justice, obtain the fruits of an unlawful bargain.' * * *

"It is said by the plaintiff's counsel, that 'Where the contract is declared void by statute, or is to do a thing directly prohibited, under a penalty, or against the policy of the law generally, the case is plain. So where the consideration arises out of, or is indirectly connected with, the violation of some great principle of public policy, the contract is in many cases void. But when the consideration arises out of, or is remotely connected with, what is merely malum prohibitum the contract is not necessarily void.' In other words, where the undertaking is either upon a consideration unlawful at common law, or to do an act unlawful either at common law or by statute, the contract is void; but if the undertaking itself be not prohibited, and the consideration for it is not unlawful at common law, the contract is good. The counsel for the plaintiff, thus understood, while he admits the consideration to be illegal, would nevertheless affirm the contract; thus, in opposition to all the cases, referring to the courts the determination, what illegal contracts shall be avoided, and what other illegal contracts enforced. But courts of justice, it is to be remembered, are but the ministers of the law, and constituted solely for the purpose of enforcing it. They uniformly refuse, therefore, to interfere in such cases, insisting that no man shall be heard who claims the fruits, or seeks the enforcement, of an illegal transaction; whether the illegality complained of results from a breach of the common or statute law, since both are binding, and, in their view, as ministers of the law, are to be equally respected. * * *

"The Chief Justice observed, that the cause had been so elaborately argued on both sides, and the points and authorities so thoroughly displayed, that it was quite unnecessary for the court to go into a formal discussion of the case. They were all of the opinion that the shingles, for the price of which the note in suit was given, having been sold in direct violation of the statute, the consideration of the promise was clearly illegal, and insufficient to support it. No principle of law, his honor added, is better settled than that no action will lie upon a contract made in violation of a statute, or of a principle of the common law. The authorities cited by the counsel for the defendant to this point, are irresistible. Indeed, the same thing has been frequently ruled by this court, in cases which cannot be distinguished, in their principles, from that now before the court; particularly in the cases of The Springfield Bank v. Merrick, and Russell v. De Grand."

The case of Mandler v. Rains, 70 Oklahoma, 174 Pac. 240, is worthy of consideration:

"Where W., a full-blood Indian, makes a contract with M. wherein he agrees to pay M. all money in excess of a certain sum for which M. may sell his interest in an inherited allotment, and such contract is withheld from the knowledge of the county court who has jurisdiction to approve such sale under Act Cong. May 27, 1908, c. 199, 35 Stat. 312, which contract had the effect, if not the purpose, of securing the approval of the county court to a conveyance for a less consideration than would have secured the approval of the court had it been aware of the contract, this would render such contract void as between the parties, and W. would have a right to recover any sums of money paid M. under said contract, whether paid voluntarily or otherwise. * * *

"In other words, the instruction told the jury that, if they should find that the contract was made in good faith with the sole and only purpose of compensating Mandler for his trouble in securing a purchaser of said land, then the jury could not find for the plaintiff for the sum sued for. We think the instruction was more favorable to the defendant than the facts under the circumstances warrant. To hold otherwise would merely nullify the act of Congress of May 27, 1908, c. 199, 35 Stat. 315, which is as follows: 'That the death of any allottee of the Five Civilized Tribes, shall operate to remove all restrictions upon the alienation of the said allottee's land; provided, that no conveyance of any interest of any full-blood heir in such land shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.'. This act of Congress was intended to protect the very class of persons among which the plaintiff is numbered, and, if it can be abrogated and set aside by an outside contract withheld from the knowledge of the county court as in the instant case, then it is absolutely worthless and would merely be as a 'sounding cymbal of tinkling brass.' It is our opinion that if said contract was made, even though in good faith, and the knowledge thereof was withheld from the court in order to secure its approval of the conveyance which the court would not approve with full knowledge of said contract, such act was a fraud upon the court, and said contract would be void and of no effect. The jury having found that said contract was made for the fraudulent purpose of securing the approval of the county court to the conveyance, and to circumvent the county court in its efforts to have what it conceived to be a fair consideration paid for said interest, and the evidence in the case reasonably tending to support said finding, disposes of this proposition, as well as the other assignment of error urged, to the effect that even though said contract was void, the payment by Washington to Mandler, having been voluntarily made, could not be by him recovered. It is true that as a general proposition of law a party to an illegal contract cannot come into court and ask to be relieved therefrom. The parties being in pari delicto, the court leaves them where it finds them. However, there are well-settled exceptions to this rule: (1)

Where public policy requires the intervention of the court; (2) where the parties are not in pari delicto; (3) where the law which makes the agreement unlawful was intended for the special protection of the party seeking relief. 9 Cyc. 550.

"Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one of them where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with the defendant. Here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. Thus it has been held that a grantor who has executed a deed pursuant to a lottery transaction may, in ejectment brought by him, set up the illegality of the conveyance, notwithstanding he is in pari delicto, as the statute for the suppression of lotteries, which declares such a conveyance void, can only be enforced by permitting the grantor to claim the invalidity of the transfer and obtain an annulment of the conveyance. Wooden v. Shotwell, 24 N. J. Law, 789.

"9 Cyc. p. 552, lays down the following rule: 'Where One Party Is Protected By the Law.—The complaining party is especially protected by the law where the agreement is not illegal per se, but is merely prohibited, and the prohibition was intended for his protection, and in such case, not being in pari delicto, he is entitled to relief.' Tootle v. Berkley, 57 Kan. 111, 45 Pac. 77; Mason v. McLeod, 57 Kan. 105, 45 Pac. 76, 41 L. R. A. 548, 57 Am. St. Rep. 327.

"In case of Smart v. White, 73 Me. 332, 40 Am. Rep. 356, the court discussed the right of a pensioner who had been assisted by the overseer of the poor of the town in securing her pension under an agreement that when she received the same the same should be applied on her indebtedness to the city for her support. She did receive it and turn it over to the overseer for the benefit of the city, then afterwards brought suit to recover this back. The court, in discussing her right to recover back the sum voluntarily paid, says: 'But the plaintiff stands in a different attitude. If her pension money was taken from her through a contract declared to be void by the statute, she can have its restoration. She would be entitled to recover it back, even had she known the law, and a fortiori entitled, not knowing it. The parties do not stand in pari delicto. The penalty of the statute is leveled at him, and not at her. The punishment is to be inflicted upon the taker and not upon the giver. She is to be protected, not punished. Her ignorance of the law, or her folly, if not ignorant of it, is excusable; but his is not. He commits a wrong; she does not. She cannot defraud herself. The statute would be nullified by a different interpretation.'

"And so, in the instant case, to hold that because the money was paid by the plaintiff voluntarily to the defendant under a contract which had the effect, if not the purpose of securing the approval of the county court to a conveyance divesting plaintiff of his property for a less consideration than the court would have approved had it been aware of all the conditions surrounding the transaction, would defeat the very purpose of the law and render powerless the court to afford the protection to this class of restricted Indians which under the law it was charged with this responsibility. It has been held by this court and the Supreme Court of the United States that the very purpose of section 9 of the act of May 27, 1908, was to prevent Indians from making improvident sales and to protect them against their own incompetency, by providing that no conveyance of an interest in inherited lands by such full-blood Indians would be valid unless approved in accordance with such act. The contract in question between plaintiff and defendant affected plaintiff's interest in inherited land, and this interest could not be conveyed by the plaintiff without the approval of the county court; which court had been constituted a governmental agent for such purpose in such cases, and, where said contract so affecting such interest was withheld from the knowledge of such governmental agency as was done in the instant case, it would necessarily render said contract void as between the parties and give the plaintiff the right to recover any sums of money paid under said contract, whether paid voluntarily or otherwise. The record in this case discloses that the county court would not have approved the deed in question if it had been apprised of such contract, because it had refused to approve the conveyance for the identical consideration which the Indian was receiving in the instant case on the ground that the consideration was inadequate.

"We, therefore, hold that said contract is void and of no effect. It necessarily follows that this cause should be in all things affirmed, and it is so ordered." Mandler v. Rains, 70 Oklahoma, 174 Pac. 240.

"All contracts or agreements having for their object that which is repugnant to public justice, or violative of public policy, or offensive to good morals, or contrary to statutory provisions, or in derogation of the principles of the common law relating to the public peace or security, and injurious to the community, are void. * * *" Robertson v. Robinson, 65 Ala. 610, 39 Am. Rep. 17.

This court had under consideration a contract for the sale of restricted Indian lands in the case of Howard v. Farrer, 28 Okla. 490, 114 Pac. 695, in which the court held:

"By reason of Act. Cong. June 28, 1898, c. 517, sec. 29, 30 Stat., p. 507, and by Act Cong. July 1, 1902, c. 1362, 32 Stat. p. 642 a sale by a full-blood Choctaw Indian to a white man

of a portion of her allotment before the removal of restrictions upon her power to alienate and an agreement to convey same when her restrictions are removed is void; and notes executed by such Indian to the purchaser for the purpose of indemnifying him against loss in the event she fails to convey said land after her restrictions are removed are also void; and recovery thereon cannot be had although the purchaser paid the purchase price of the land at the time of the agreement of sale. * * *

"By one of these instructions the jury was told that if they should find from the testimony in the case that the notes sued upon were contracts looking to the sale of Indian land, and were made before the restrictions had been removed from same, in that event the notes were made in violation of the law and against public policy and therefore void; and the verdict should be in favor of defendants. * * *

" 'All contracts or agreements having for their object that which is repugnant to public justice, or violative of public policy, or offensive to good morals, or contrary to statutory provisions, or in derogation of the principles of the common law relating to the public peace or security, and injurious to the community, are void. * * * ' "

The act of May 27, 1908, entitled, "An Act for the removal of restrictions from part of the lands of the allottees of the Five Civilized Tribes, and for other purposes," contains the following provisions:

"All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degree of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed bloods, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney or any other incumbrance, prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

"The object of a contract must be lawful when the contract is made, and possible and ascertainable by the time this contract is to be performed." Vol. 1, Rev. Laws of Okla. 1910, c. 12, art. 1, sec. 922.

"Where a contract has but a single object and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." Vol. 1, Rev. Laws of Okla. 1910, c. 12, art. 1, sec. 924.

This section of the statute, supra, simply declares the common law rule.

"The considerations of a contract must be lawful." Vol. 1, Rev. Laws of Okla. 1910, c. 12, art. 1, sec. 928.

"If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Vol. 1, Rev. Laws of Okla. 1910, c. 12, art. 1, sec. 929.

"The sale and transfer of a city license to sell intoxicating liquor is prohibited by the law of this territory, and where such sale of a license enters into and makes a part of the consideration for a promissory note, such note is wholly void." Arnett v. Wright et al., 18 Okla. 337, 89 Pac. 1116.

"Under Civil Code, sec. 1608, providing that if any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void, where a county clerk renders services in collecting data from his records and from other sources, and the whole of it is intermingled, his agreement for extra compensation, being void as to the portion for collecting data from his records, is void in toto." Humboldt County v. Stern (Cal.) 68 Pac. 324.

The second contention of the plaintiffs, that the contract is severable on its face, is not well taken. Plaintiffs say in their brief as follows:

"It will be observed that the contract did not provide for a lump sum for the land mentioned, but provided for a certain sum per acre and three hundred and sixty of the acres are without restrictions. If the sale price had been for a lump sum for the entire acreage, then it might be said that the contract was entire; but being sold by the acre, the contract is severable on its face as to that which could be legally sold from that which was under restrictions."

The contract provided for the sale of 400 acres of land at the rate of $27.50 per acre, which by mathematical calculation would amount to $11,000; applying the rule "certum est quod certo reddi protest,—that is certain which can be reduced to a certainty." Stating the price per acre instead of a lump sum does not make the contract severable.

"The defendant purchases a tract of land consisting of 1,150 acres, and agrees with plaintiffs, in consideration of their services in procuring the purchase and upon other considerations, that plaintiffs should be entitled to one-fourth of the profits arising from a resale of the land. 831 acres were sold, when plaintiffs brought an action to recover their share of the profits. Held: that the contract is entire and indivisible and that plaintiffs cannot maintain the action until all the land has been sold and until it can be ascertained what if any, profits there are upon the transaction." Crawford et al. v. Surety Inv. Co., 91 Kan. 748, 139, Pac. 481.

The plaintiffs' third contention is that the contract is ambiguous, and they insist parol evidence is admissible to explain it. The contract in controversy is easily construed; its terms are plain and simple; its only infirmity being its illegality, and parol testimony is not admissible for the purpose of purging a contract of its illegality.

"The paramount rule for the construction of a contract is to ascertain the intent of the parties at the time the contract was entered into and to give effect to same if it can be done consistent with legal principles. If the language of a contract is such as to clearly show the intent of the parties, then there is no need to apply any technical rules of construction, for where there is no doubt, there is no room for construction." Strange et al. v. Hicks et al., 78 Okla. 1, 188 Pac. 347; Duffy v. Scientific American Compiling Department, 30 Okla. 742, 120 Pac. 1088.

"A complete and unambiguous contract merges all prior communications and negotiations within itself, and requires no explanation." Deer Park Lumber Co. v. Oregon-Washington Lumber Co. (Wash.) 177 Pac. 336.

"A claim for damages in relation to a sale of land predicated on alleged violation by defendant of parol covenants and warranties made prior to or simultaneously with the execution of the written contract of sale, is not well founded; for the reason that the execution of a contract in writing supersedes all the oral negotiations or stipulations surrounding its matter which preceded or accompanied the execution of the instrument." Oland et al. v. Malson et al., 39 Okla. 456, 135 Pac. 1053.

The trial court did not err in sustaining the demurrer to plaintiffs' petition and first amended petition and in sustaining the motion to strike the amended petition and rendering its judgment dismissing the action.

The judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.