## BROCK v. HINES.

No. 12712—Opinion Filed Feb 5, 1924.

**Pleading—Judgment on Pleadings—Issues of Fact in Action to Set Aside Deed.**

In an action to set aside a deed to lands on the ground that said deed was obtained by fraud and misrepresentations where defendant in his answer denies the allegations of fraud and misrepresentation, this raises an issue of fact, and it is error for the court to sustain a motion for judgment on the pleading.

(Syllabus by Maxey, C.)

Commissioners' Opinion. Division No. 1.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by William Hines against George R. Brock. Judgment for plaintiff, and defendant brings error. Reversed.

This was a suit brought by William Hines against George R. Brock in the district court of Stephens county, Okla., on the 1st day of October, 1919, by plaintiff filing his petition in said court seeking to set aside

and cancel a deed made by Hines, the plaintiff, to the defendant, Brock, covering certain lands in Stephens county, Okla. Plaintiff attached a copy of the deed sought to be cancelled, and also a copy of a certain contract entered into by and between the plaintiff and defendant, whereby the defendant, as consideration for the deed to the land described in said petition, granted to plaintiff the right and privilege of selling a certain patent or trade mark paint or enamel in 23 counties in the state of Texas. On the 7th day of November, 1919, the plaintiff filed an amended petition in which he alleged that the deed was fraudulently obtained from him to the land in Stephens county by the defendant representing to him that the Brock Two Hours Enamel, manufactured and sold by the defendant, was especially fine paint for the painting of automobiles and other vehicles, and that plaintiff could make large sums of money in selling said enamel or paint. The plaintiff executed to the defendant a deed to certain lands in Stephens county, described as follows: The southwest quarter of the northeast quarter and the northeast quarter of the southeast quarter of section 36, township 1 south, range 4 west. The consideration mentioned in the deed is $2,400, and the assuming by the defendant grantee of a $800 mortgage on said premises. This deed was executed by the plaintiff at Chickasha, Grady county, Okla., and at the same time and place, the defendant executed a contract granting the plaintiff the right to sell Brock Two Hours Enamel, which was the sole consideration for the deed. Said contract is attached to plaintiff's amended petition, and is as follows:

"This agreement made this the _____ day of August by and between George R. Brock, No. 518 South Robinson ave., Oklahoma City, Okla., party of the first part, and William Hines, party of the second part, Witnesseth:

"1. The party of the first part owns and controls entire right of the United States on the trade mark Two Hours Enamel the same being an enamel for use for an outside finish for automobiles and other vehicles.

"2. The party of the second part is desirous of owning the sole right to Arthur, Yount, Eastland, Comanche, Mills, San Sababa, Llano, Gillespie, Kendall. Bexar, Aracasca, McNullen, Duval, Starr, Zapata, Webb, Lasalle, Frio, Medina, Baniera, Kerr, counties for selling and disposing of Brock's Two Hours Enamel according to orders.

"3. Said party of the second part the said Brock's Two Hours Enamel according to orders said party of the second part agrees to pay said party of the first part for the said right to the above named territories.

"4. The party of the second part shall sell and control Brock's Two Hours Enamel within the territories above named and shall not sell or dispose of the said Enamel outside of said territories.

"This day, I, George R. Brock, signed the right entitled to said counties.

"(Signed) George R. Brock.
"(Signed) William Hines."

On the 1st day of March, 1920, the defendant filed his answer, which is a general denial, and he admits that the plaintiff executed and delivered to him the deed set out in plaintiff's petition, and that the deed was duly recorded by him in Stephens county, and admits that he executed the agreement set forth in plaintiff's amended petition whereby plaintiff was given the right to sell Brock Two Hours Enamel in the territory therein designated, but denies there was any fraud in connection therewith, and denies that the same was in violation of law. The orginal petition was sworn to, but the amended petition was not sworn to, and neither is the answer sworn to. A receiver was appointed at the beginning of the suit to take charge of the lands described in the petition, collect the rents pending the suit, and hold same subject to the order of the court. On the 14th day of April, 1921, said cause came on for trial. Both parties answered ready for trial and waived a jury and agreed to try the case to the court. Whereupon the plaintiff by his attorney moved the court for judgment on the pleadings, and after consideration of said motion and the argument of counsel thereon, the court sustained the motion and entered judgment on the pleadings. Defendant filed a motion for new trial, which was overruled, and the case appealed to this court.

C. L. McArthur and C. G. Moore, for plaintiff in error.

Ben Goff and Sitton & Anderson, for defendant in error.

Opinion by MAXEY, C. This case turns on the question of whether the transaction between the plaintiff and the defendant comes within the purview of what is known as the Blue Sky Law, being chapter 49 of Session Laws of 1919. The plaintiff contends that the transaction between him and the defendant, as shown by the pleadings and the exhibits in the case, comes clearly within the provision of said chapter 49, Session Laws 1919. The defendant contends that it does not come within the provisions of the law. The trial court held that it did, and that is the question presented to this court. The first section of

said act known as the Blue Sky Law is as follows:

"The term 'securities' as used in this act shall be taken to mean stock certificates, shares, bonds, debentures, certificates of participation, membership contracts, contracts or bonds for the sale and conveyance of land on deferred payments or installment plan, or other instrument in the nature thereof by whatsoever name known or called and including the capital stock of any and all corporations offering the same for sale. The term 'speculative securities' as used in this act shall be taken to mean and include: (1) All securities to promote or induce the sale of which, profit, gain or advantage unusual in the ordinary course of legitimate business is in any way advertised or promised; (2) all securities for promoting the sale of which a commission of more than ten per cent. is offered or paid; (3) all securities into the specified par value of which the element of chance or hazard of speculative profit or possible loss equal or predominate over the element of reasonable certainty, safety and investment; (4) all securities the value of which materially depends on proposed or promised future promotion or development rather than on present tangible assets and conditions; (5) the securities of any enterprise, association, partnership or corporation, which has included or proposes to include in its assets as a material part thereof, patents, formula, good will, promotion, or intangible assets, or which has issued or proposes to issue a material part of its securities in payment for formula, patents, good will, promotion or intangible assets; (6) securities made or issued in furtherance of promotion of any enterprise or scheme for the sale of unimproved or undeveloped land on any payments or installment plan, when such lands are not situated in the state of Oklahoma and the value of such securities materially depend on the future performance of any stipulation by the promoters of such enterprise to furnish irrigation or transportation facilities, or other value enhancing utility or improvements. The term 'speculative enterprise', as used in this act shall be taken to mean any business undertaking, project, venture or activity for the promotion of furtherance of which 'speculative securities' as herein defined, are made, issued, sold or offered for sale. For the purpose of carrying out the provisions of this act, there is hereby created a Commission, to be known as the State Issues Commission, composed of the Bank Commissioner, who shall be chairman thereof, the Secretary of State and State Auditor. The said commission shall have authority to appoint with the approval of the Governor, a secretary, who shall receive a salary of $2,500 per annum, payable monthly."

Section 2 of said chapter makes it unlawful to sell, or offer for sale, or attempt to sell speculative securities; and section 3 provides for obtaining a permit to sell from the Issues Commission.

The plain and evident purpose of this statute is to prevent what is called "fly-by-night concerns," or "get-rich-quick schemes," which are sold to unsuspecting—oft-times ignorant and inexperienced individuals. That is a fraud, and for the protection of just such people that are too ignorant or inexperienced to protect themselves. This statute so far as we have been able to learn has not been construed by this court. The Criminal Court of Appeals, in the case of Hornaday et al. v. State, decided June 30, 1922, not yet officially reported, 208 Pac. 228, says:

"The purpose of this statute, as gathered from the title considered together with the context of the act, appears to be two-fold: First, to prevent stock brokers and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings; second, to protect credulous and incompetent persons from their own inclinations to speculate in hazardous enterprises, entered into on their own account or on the advice of friends, though not brought about by interested promoters or stock brokers.

"The objects, then, are to prevent fraud and unfair dealing in securities, as well as to prevent honest people, free from sinister influences, from investing in uncertain, ephemeral, 'get-rich-quick' stocks and securities."

Again, Corpus Juris, in defining "Blue Sky Law," says:

"A popular name for acts providing for the regulation and supervision of investment companies, a law intended to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant gold mines, and other like fraudulent exploitations." 8 Corpus Juris, page 1130.

A great many of the states of the Union have passed laws similar to chapter 49, Session Laws of 1919, and the questions have been before the courts of various states and the federal courts, including the Supreme Court of the United States. Its constitutionality is established by decisions of the Supreme Court of the United States and various states in which such laws have been enacted. The courts place it on the grounds that it is a proper police regulation for the states the same as laws requiring the inspection of meat before it is placed on sale and the inspection of milk from dairies before placing it on sale, and various other regulations. But the case of Hornaday et al. v. State, supra, is the

only case that has reached the appellate courts of this state. Elliott on Contracts, 1913-1923 · Cumulative Supplement, section 2793, discusses the Blue Sky Law and cites cases where various provisions of it have been construed. American Law Reports Annotated Report, volume 15, page 262, under the head of Annotated Blue Sky Law. The cases up to that time are collated and annotated, and also in American Law Reports, Annotated, volume 24, page 523, will be found a collation of authorities of all of the different provisions of the Blue Sky Law in the different states and makes an interesting brief on the construction of the various provisions of the law. It would require too much time and space in this opinion to review the authorities construing the different section of the law, and we will content ourselves with pointing out where the authorities can be found. The plaintiff in error insists that there was a question of fact raised by the pleadings that should have been passed on by the court or jury, and that it was error for the court to enter judgment on the pleadings. Aside from the question as to whether the contract pleaded by plaintiff and admitted by defendant of itself constitutes a violation of the Blue Sky Law (a question we do not now decide), we feel that the court should have heard the testimony on the allegations of fraud in the petition, and under our view of the general law, there is enough alleged in the petition, if true to have warranted the court in setting aside the deed and restoring the real estate described therein to the plaintiff, and we think the court should have tried the case on its merits, and then, without waiving the question of whether or not the transaction comes within the Blue Sky Law, the whole case could have come up to this court and been tried. The case of Mandler v. Rains, 70 Oklahoma, 174 Pac. 240, is a case involving fraudulent contract of sale of real estate in which the court held the contract void for fraud in the procurement. The case of Mann v. Brady, 80 Okla. 299, 196 Pac. 346, is another case involving a contract to sell certain lands in which the question of fraud was involved and passed on by the court. Numerous other cases from this court setting aside contracts on the ground of misrepresentation, deceit, and fraud can be found and applied. ˙

We are of the opinion that it was error for the trial court to have entered judgment on the pleadings, and for that error the case should be reversed and remanded to the trial court to set aside the judgment heretofore rendered and granting new trial.

By the Court: It is so ordered.