### ARMSTRONG v. PHILLIPS et al.

No. 11448—Opinion Filed March 8, 1921.

Rehearing Denied May 31, 1921.

(Syllabus.)

**1. Appeal and Error — Findings — Conclusiveness—Equity Case.**

Where, in a case properly triable to a jury, a jury is waived, and the case is tried to the court, the findings of the court in favor of one of the parties will, upon review here, be given the same weight as the verdict of the jury, and the findings of fact will not be disturbed where there is competent evidence reasonably tending to support such findings, and "in a case of purely equitable cognizance, the findings of the trial court will not be disturbed on appeal unless the same are clearly against the weight of the evidence."

**2. Indians—Conveyance of Lands—Removal of Restrictions—Application of Statute.**

The provisions of the act of Congress of May 27, 1908, remove the restrictions on the alienation of the allotments of minor Cherokee Indians having less than one-half Indian blood, and provided that such allotments may be sold under the order and supervision of the probate courts of the state, and in no other way; but necessarily no question aris-

ing under the act relates to any property acquired by such allottees otherwise than by and through the allotment of the lands belonging to the tribe, because the act does not purport to deal with any property except that.

3. **Indians — Minors — Conferring Majority Rights—Effect.**

Section 1, art. 1, Session Laws 1909, authorized female persons of the age of 18 years, being otherwise qualified thereto, owning real estate, to mortgage, convey, or otherwise dispose of or make any contract relating to real estate or any interest therein. Section 3382 et seq. of Wilson's Rev. and Ann. Statutes of Oklahoma 1903, provides that the district courts for the several counties shall have authority to confer upon minors the rights of majority, so that every act done by the persons so authorized, shall have the same force and effect in law as if done by persons at the age of majority. Held, that this provision applies to a female of three-eighths Indian blood; (b) that the judgment of the district court, in a proceeding brought under these provisions of the statute conferring such majority rights, is not subject to collateral attack, and confers upon her the right to contract in relation to any property acquired by her otherwise than by and through the allotment of the lands belonging to such Indian Tribe only, but does not apply to allotted lands or to trust funds derived therefrom.

4. **Mortgages — Deed Absolute on Face — Action to Cancel—Innocent Purchasers—Burden of Proof.**

Where a party plaintiff sues to cancel her deed, absolute upon its face, and to recover the land, alleging that such conveyance was intended to operate as a mortgage, and offers to return the purchase price with accrued interest, and the defendant is a subsequent vendee, and pleads that he is an innocent purchaser for value and without notice, the burden of proving that the instrument was intended to operate as a mortgage is upon the plaintiff, and the evidence must satisfy the high standard of probative force requiring that the same must be cogent, convincing, clear, and satisfactory, otherwise such proof must fail, and the defendant will be entitled to retain the land and to full and complete relief.

5. **Same — Judgment — Sufficiency of Evidence.**

Record examined, and held, that the judgment of the court is not clearly against the weight of the evidence, and the same is affirmed.

Error from District Court, Washington County; Preston A. Shinn, Judge.

Action by Minnie Armstrong against Frank Phillips and others to cancel deed and recover land. Judgment for defendants, and plaintiff brings error. Affirmed.

See 76 Okla. 192, 181 Pac. 715, 184 Pac. 109.

Norman Barker, B. T. Hainer, and McGuire & Devereux, for plaintiff in error.

Rowland & Talbot, John H. Kane, R. H. Hudson, and Burford, Miley, Hoffman & Burford, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Washington county, Hon. Preston A. Shinn, Judge.

This is the second appeal to this court in this cause, and involves the N. W. ¼ of the N. E. ¼ of section 6, Tp. 26, R. 13 E., containing 40 acres, situated in Washington county, Okla.

The record discloses that the original petition was filed in the district court of Washington county on February 15, 1917. It alleges, in substance, that Minnie B. Armstrong was a three-eighths Cherokee Indian; that on May 15, 1909, she purchased from one John Hildebrand the land in this litigation. That said land was purchased from moneys received by her as the proceeds derived from her restricted allotted and inherited lands, and from no other source. That on February 28, 1910, she conveyed said land to Arthur Armstrong. who thereafter leased for oil and gas purposes to A. H. Huling and J. C. Bixler, who later assigned to McCandless, Beatty, and Condon; that on June 19, 1915, Arthur Armstrong conveyed said lands to Frank Phillips, who had developed the same for oil and gas, and had removed large quantities of oil therefrom; that her deed to Arthur Armstrong was made without the supervision of the county court of Washington county, and was therefore void. Copies of all instruments were attached, and plaintiff prayed for cancellation of said deed, that her title be quieted, and that she recover $25,000 damages for oil and gas taken from the land.

On March 17, 1917, defendant Frank Phillips filed motion to strike portions of plaintiff's said petition, which motion was by the court sustained, and on May 13, 1917, plaintiff filed an amended petition. In this amended petition plaintiff abandons the theory that said lands were purchased with moneys derived from her allotted lands. She alleges that she is the owner of the lands, and that the defendant Frank Phillips unlawfully keeps her out of possession thereof. She further alleges that on the 8th day of June, 1908, she executed a deed to said lands to one V. J. Knisley, but that said deed was void for the reason that she was at that time a minor, and for the further reason that said deed was obtained by fraud. That while the title stood in Knisley's name, he mortgaged the land to the Citizens' Bank & Trust Company, of which Frank Phillips was president.

That Knisley's title was set aside by the court, but that the bank was threatening to foreclose its mortgage, and because of such threats she conveyed the land to Arthur Armstrong to procure money to pay said mortgage; that her deed to Arthur Armstrong was intended as a mortgage; and that the bank and Frank Phillips had knowledge of these facts. She prays for cancellation of all conveyances, but offers to redeem from the alleged mortgage to Arthur Armstrong.

On May 24, 1917, plaintiff filed a second amended petition. In this second amended petition she still makes no reference to any claim that the land was purchased with moneys derived from her allotment. She joins the Lewcinda Oil Company as party defendant, alleging that Phillips had leased the lands to said company, and that the company had knowledge that her deed to Arthur Armstrong was a mortgage. She alleges that said deed was void, because of her minority, and further alleges that said deed was intended as a mortgage, and offers to redeem therefrom.

The defendant Frank Phillips filed an answer, which was subsequently adopted by each of the other defendants. The answer denied all the allegations of the petition, alleged ownership in Phillips and the Lewcinda Oil Company, denied knowledge of any mortgage transactions between plaintiff and Arthur Armstrong, and set up proceedings in the district court of Washington county for the removal of plaintiff's disabilities of minority, and decree of the court removing disabilities and conferring upon plaintiff the rights of majority and the right to do business as an adult person.

The answer further alleged that, after the removal of her said disabilities, and on February 2, 1909, plaintiff purchased certain lots near Bartlesville (referred to throughout the proceedings as the Gilkey lots), and that on May 15, 1909, she traded the lots to Hilderbrand for the land in question. The answer pleaded estoppel, laches, and that the action was not brought within one year after majority, and pleaded the one, two, and three years statutes of limitations. The answer also pleaded estoppel by reason of plaintiff's knowledge of operations on the lands by the defendants, and the expenditure of large sums of money in the development of the lands for oil and gas, the plaintiff standing by without objections from the time defendants purchased the land until a long time after the development and production of oil.

Plaintiff filed a reply, alleging that the proceedings conferring the rights of majority upon plaintiff were void, for the reason that the court was without jurisdiction to confer the rights of majority upon her. She denied the allegations of laches. She admits the purchase of the Gilkey lots, and alleges that she paid $300 for said lots, which sum, she says, was "proceeds from her individual allotment set aside to her as a Cherokee minor;" admits that she exchanged the lots for the Hilderbrand land but says that she paid an additional consideration of $250 cash, which, she says, was also derived from her allotment.

Upon these pleadings the case went to trial, and at the close of plaintiff's evidence demurrer thereto, interposed by defendants, was sustained by the court. The case was brought to this court, and the judgment of the trial court was reversed, this court holding that plaintiff's evidence upon the mortgage question was sufficient to withstand a demurrer. (76 Okla. 192, 181 Pac. 715, 184 Pac. 109.) Upon rehearing, the original opinion was modified, the court still holding that, as against a demurrer to the evidence, the proof was sufficient upon the mortgage question, and that the burden rested upon defendants to show that they were innocent purchasers for value.

Upon the return of the case to the lower court, plaintiff filed a supplemental petition, making Phillips Petroleum Company a party defendant, which company filed an answer adopting the answer of the defendant Frank Phillips.

Upon the issues thus joined, the case was tried to the court, and judgment was rendered for the defendants. Upon plaintiff's request, the court made complete findings of fact and conclusions of law.

The plaintiff assigns 15 specifications of error, but the same were argued in the brief filed by plaintiff's counsel under four propositions, which are as follows:

(1) "That the pleadings and testimony plainly show that the plaintiff in error is a member of the Cherokee Tribe of Indians, and that the property involved in this controversy was purchased from moneys derived by her guardian as a bonus for an oil and gas mining lease on her Cherokee Indian allotment, during her minority; that, as such minor her allotted lands were restricted, and that the investment by her guardian, of rentals for an oil and gas mining lease in the lands in question, embraced such lands within her restricted Indian estate, and that the whole became and was charged with the trust of her guardianship during her minority.

(2) "The deed was a mortgage and the defendant in error had notice of it.

(3) "That plaintiff in error was imposed upon by defendant in error.

(4) "The proceedings to confer majority rights were void."

The plaintiff in her second amended petition, in which she made the allegations of her original petition and first amended petition parts of her second amended petition and by the exhibits attached to her second amended petition made her first cause of action one in ejectment to recover the lands in controversy, and joined therewith her second cause of action, in which she sought equitable relief in the way of cancellation of conveyances made by her to her vendees, and for an accounting, and that the conveyance by her of the lands in controversy to her grandfather be declared a mortgage instead of a deed absolute, and that her title to said lands be quieted and for a receiver, and for injunctive relief, or, she having tendered the amount of the mortgage and interest, that the instrument be held subject to be foreclosed with her right of redemption declared.

By the several separate answers of the defendants, and the plaintiff's reply thereto, issues were properly joined between the parties defendant and plaintiff, respectively. The record discloses that at the commencement of the trial a jury was waived.

The trial court made separate findings of fact and conclusions of law, and rendered a general judgment that the plaintiff take nothing and that the defendants have and recover their costs, awarding execution therefor.

It is the established rule of this court that in a law action the findings of fact by the trial court will not be disturbed when there is evidence reasonably tending to support such findings, and that in a cause of purely equitable cognizance the findings and judgment of the trial court will not be disturbed unless clearly against the weight of the evidence. Swan v. Duncan, 78 Okla. 305, 190 Pac. 678; Parker v. Tomm, 78 Okla. 103, 188 Pac. 1074; Curtis v. Harris, 76 Okla. 226, 186 Pac. 574; Barnett v. Barnett, 78 Okla. 249, 189 Pac. 743; Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443.

The findings of the court are as follows:

(1) "The court finds that the plaintiff, Minnie B. Armstrong, was born November 25, 1893; that she is on the Cherokee rolls, and is of three-eighths Indian blood.

(2) "The court finds that on the 5th day of June, 1908, the district court of Washington county, Oklahoma, entered a decree revoking the disabilities of minority of said plaintiff herein; and that the plaintiff, her father, and mother were present in the court at the time said order and decree was made.

(3) "The court finds that the lands involved in this suit were not at any time and are not now a part of her Indian allotment.

(4) "The court finds that the plaintiff was on the 15th day of May, 1909, the owner of several city lots in the Gilkey addition to the city of Bartlesville, Oklahoma, and that some of said land was used in payment by her for the purchase of the lands involved in this action.

(5) "The court finds that there is not sufficient evidence to warrant the finding that the purchase money paid for the Gilkey lots was derived from trust property, and therefore finds that said funds were not derived from trust property.

(6) "The court finds that on the 28th day of February, 1910, the plaintiff, Minnie B. Armstrong, executed and delivered to her grandfather, Arthur Armstrong, a warranty deed to the lands involved in this action, said deed reciting as a consideration therefor, the sum of $1,400.00; and that said deed upon its face purported to convey all the right, title, and interest of the said Minnie B. Armstrong. The court is unable to determine from the evidence whether said deed was intended by the parties as an absolute conveyance, or as a mortgage, but finds that there is not evidence to overcome the presumption that the same was intended as a deed absolute.

(7) "The court finds that on the 26th day of November, 1910, Arthur Armstrong and his wife, Maggie Armstrong, executed to A. H. Huling and J. C. Bixler an oil and gas mining lease covering said tract of land, and thereafter the said Arthur Armstrong made, executed, and delivered to Washington county, Oklahoma, a deed of right of way for highway purposes across said tract of land; and thereafter the said Arthur Armstrong listed said lands with real estate agents in the city of Bartlesville, Oklahoma, for sale and otherwise exercised full ownership and control over said lands.

(8) "The court finds that on the 19th day of June, 1915, the said Arthur Armstrong, acting through M. D. Parr, a real estate agent in the city of Bartlesville, Oklahoma, made, executed, and delivered to Frank Phillips, one of the defendants herein, his certain warranty deed covering the lands in question, the said Frank Phillips paying therefor the sum of $700.00.

(9) "The court finds that the said Frank Phillips, at the time he purchased said land from the said Arthur Armstrong, had no notice, actual or constructive, of any agreement between Minnie B. Armstrong and Arthur Armstrong that said deed of February 28, 1910, was to be considered as a mortgage; and that the said Frank Phillips was an innocent purchaser for value, without notice of any defect in the title of said land.

(10) "The court further finds that the other defendants herein derived their title from defendant Frank Phillips.

(11) "The court further finds that the plaintiff, Minnie B. Armstrong, attained her majority on the 25th day of November, 1911, and that this action was commenced on the 15th day of February, 1917, and more than five years after plaintiff reached her majority."

The court therefore concludes as a matter of law:

(1) "That the decree of the district court of Washington county, Oklahoma, dated June 5, 1908, conferring majority rights upon the plaintiff was a valid judgment of said court, and empowered her to sell and convey the lands involved in this action and to make a good and sufficient warranty deed thereto.

(2) "That the said Frank Phillips, being an innocent purchaser for value, without notice, acquired all the right, title, and interest of the said Arthur Armstrong and the said Minnie B. Armstrong in and to said lands.

(3) "The court further finds that this action is barred both by statute of limitations of the state of Oklahoma and by the laches of the plaintiff.

(4) "The court finds the issues generally in favor of the defendants and against the plaintiff.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiff take nothing by this action, and that the defendants have and recover their costs herein, for which let execution issue."

All of the foregoing findings of fact, numbered from 1 to 11, inclusive, except No. 9 thereof, are, we think, purely findings of fact, and from an examination of the entire record we cannot say that such findings are clearly against the weight of the evidence, and under the rule announced in the cases cited supra, such findings are approved.

The 9th finding, we think, is a mixed question of fact and law, and the same will be hereafter discussed.

From the findings of fact it is shown that the plaintiff was a duly enrolled Cherokee Indian of three-eighths blood; that she was born November 25, 1893; that the land in controversy was not part of her allotment and was not purchased by the proceeds in any way arising from her allotment; that she conveyed the same by absolute deed to her grandfather, Arthur Armstrong, on February 28, 1910, and that the deed from Arthur Armstrong to the defendant Frank Phillips was dated June 19, 1915.

Counsel's first contention, that the land in controversy was restricted, and that the provisions of the act of Congress of May 27, 1908, applied, is without merit. There is no contention that the land was her allotment, and as the trial court specifically found that the purchase money paid for the Gilkey lots was not derived from trust property, said act has no application. Such has been the uniform holding of this court, as announced in the case of Cochran v. Teehee, 40 Okla. 392, 138 Pac. 563, wherein it was said:

"Necessarily no question arising under the act relates to any property acquired by the allottees otherwise than by and through the allotment of the lands belonging to the tribe, because the act does not purport to deal with any property except that."

In the case of Kirkpatrick v. Burgess, 29 Okla. 121, 116 Pac. 754, this court said:

"Under the statutes of this state, as we have noted them above, the mere marriage of a minor, except as to allotted lands, qualifies him to sell his land; hence the necessity of any supervision on the part of the probate court or of any guardian does not exist."

We find, and so hold, that the land in controversy not being the plaintiff's allotment nor purchased with Indian trust funds, her status as to her power to alienate the same was the same as though she was not of Indian blood, and that the act of May 27, 1908, supra, has no application. Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; authorities cited supra.

We will next consider the plaintiff's specification "that the proceedings to confer upon the plaintiff in error the right of majority are void," and the alleged reasons that "no title is given to the proceedings in said notice; the process does not run in the name of the state of Oklahoma; it is not under the seal of the court, neither is it signed by the clerk and dated the day it was issued." In the consideration of the questions it should be borne in mind that this is not an ordinary civil action, with adverse parties, as defined in section 4644 of the Revised Laws of 1910. It is a "special proceeding," as defined in section 4645.

Section 4644 provides:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

It is clear that under this definition a proceeding for the removal of the disabilities of minority is not "an action," as thus defined.

Section 4645 provides:

"Every other remedy is a special proceeding."

It is clear, therefore, that a proceeding for the removal of the disabilities of minority is a "special proceeding."

Section 4646 provides:

"Actions are of two kinds: first, civil; second, criminal."

Section 4703, directing the procedure for the commencement of a civil action, provides that:

"A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon."

Under this section it is necessary to the commencement of a civil action that:

"(a) A petition be filed in the office of the court clerk; (b) a summons be issued thereon."

There is no such requirement in the statutes with reference to the commencement of a special proceeding.

The law as it existed at the time of the rendition of the decree of the district court of Washington county, which plaintiff in error seeks to attack, appears in section 3832 et seq. of Wilson's Rev. & Ann. Statutes of Oklahoma of 1903.

Section 3832 provides:

"That the district court for the several counties * * * shall have authority to confer upon minors the rights of majority concerning contracts, and to authorize and empower any person who is a resident of the county, and under the age of twenty-one years, to transact business in general, and any business specified and with the same effect as if such act or thing were done by a person above that age; and every act done by a person so authorized shall have the same force and effect in law as if done by persons at the age of majority."

Under this section we think there cannot be any question as to the jurisdiction, power, and authority of the district court "to confer upon minors the rights of majority concerning contracts," and "to authorize and empower any person who is a resident of the county, and under the age of 21 years, to transact business in general," so that "every act done by a person so authorized shall have the same force and effect in law as if done by persons at the age of majority."

In order to obtain the rights of majority, section 3833 of said statutes of 1903 provides that the minor, by his or her next friend, shall file in the district court a petition "set- ting forth the age of the minor petitioner," that petitioner is, and has been for at least one year, a bona fide resident of the county, and the cause for which petition seeks to obtain the rights of majority. And said section further provides:

"And the district court being satisfied that the said petitioner is a person of sound mind and able to transact his or her affairs, and that the interests of the petitioner will be thereby promoted, may, in its discretion, order and decree that the petitioner be empowered to exercise the rights of majority for all purposes mentioned in this act."

Section 3834 of said statutes provides that:

"The petition mentioned in the foregoing section shall not be filed until notice of such application shall have been given by publication in some newspaper printed in the county where such petition is to be filed, and if there be none, then in some newspaper having a general circulation in the county, for two consecutive weeks prior to the filing of the said petition."

The statutes say nothing about a "summons" or a "writ" or "process."

It does not require any action of any kind of the clerk of the court. It clearly negatives the idea of any action on the part of the clerk. In fact, it is the specific, mandatory provision of section 3834 that the petition provided for in section 3833 shall not be filed until the notice provided for in section 3834 has been given. It nowhere provides that the clerk shall give this notice. And there is nothing on file in his office to call forth any official action of any kind on his part. From all of which it seems perfectly clear that the notice required to be given by the provisions of section 3834 is not a writ or process within the meaning of section 19, art. 7, of the Constitution, or of section 5319 of the Revised Laws of 1910.

The statute does not specify by whom the notice shall be given, but clearly it is the intention of the statute that the notice shall be given by the petitioner. In this case, the notice shows for itself that it was signed by the minor, by her father, as her next friend, and by her attorney. There is no suggestion that the notice was not duly published as required by the statute.

The statute of Arkansas on this subject is practically identical with our statutes, supra. The same is as follows:

"They (circuit courts) shall have the power to authorize any person who is a resident of the county, and under twenty-one years of age, to transact business in general, and any particular business specified in like manner, and with the same effect, as if such

act or thing was done by a person above that age; and every act done by a person so authorized shall have the same force and effect in law and equity as if done by a person of full age."

The case of Young v. Hiner (Ark.) 79 S. W. 1062, was a case where John Rollison, a minor, had neither father nor mother living. While abiding in Huntington, in the Greenwood district, in Sebastian county, he went to Fort Smith with O. M. Harwell, an attorney, and filed his petition in the Sebastian circuit court for the Fort Smith district, asking that his disabilities as a minor be removed. On the hearing the minor appeared and testified that he was 18 years of age, when, in fact, he was only a few months past 15, which, he says, he was prompted to do by Harwell. Order was entered removing his disabilities. He conveyed certain lands that belonged to him to Mrs. Martha L. Hiner, who afterwards sold and conveyed said lands to others. The said minor's guardian thereafter filed the said suit to set aside said conveyances, on the ground of fraud, and on the ground that the court was without jurisdiction of the person of the minor, and therefore the order of the court was void.

Paragraphs 1 and 2 of the syllabus of said case are as follows:

(1) "The jurisdiction of a circuit court over the person of a minor whose disability it orders removed, as authorized by Sand. & H. Dig., sec. 1119, cannot be collaterally attacked on the ground that the minor was not a resident of the district.

(2) "Where a minor appears in proceedings under Sand. & H. Dig., sec. 1119, to remove his disability and testifies to his age, he thereby. being a resident of the district, subjects himself to the court's jurisdiction."

And in the opinion the court says:

"John Rollison appeared before the circuit court at the time his petition was presented and heard, and testified, for the purpose of securing the relief asked, that he was 18 years old. He thereby appeared in the proceeding, and, being a resident of the district, subjected himself to the jurisdiction of the court."

The journal entry of the district court of Washington county conferring majority rights upon the plaintiff is as follows:

"Now on this 5th day of June, A. D. 1909, the same being one of the days of the regular June term, A. D. 1908, of this court, begun and holden at Bartlesville, in the county of Washington, state of Oklahoma, this cause coming on to be heard before me, Thos. L. Brown, judge of said court, in open court, in the court room in said city, county and state aforesaid, upon the petition of said

Minnie B. Armstrong for the removal of her disabilities as a minor, and asking to be declared of full age for all legal intents and purposes and to be capacitated to transact business for herself the same as an adult, and it appearing to the court upon the proofs taken at said hearing, that said minor is now sixteen years of age, and that she had been and is now a resident of the county and state aforesaid, such residence having been continuous therein for more than one year next before the filing of said petition, and that said minor has graduated from the public schools of the city of Bartlesville, and holds a certificate or diploma of such graduation, which was duly offered in evidence and presented to and inspected by the court on such hearing, and that said minor is conversant with the English language and understands the methods of business as commonly practiced in this community, and is qualified and competent to attend to business for herself, the same as any other adult, and it further appearing that the said ward is living with her father and mother, who appeared in open court with her and were in favor of the prayer of her petition being granted, and that due notice has been given as required by law for the hearing of such petition, as appears from the proof of publication attached to and filed with said petition and duly submtted to said court, and the court being fully advised as to the facts and the law governing the same: Now, therefore, it is hereby ordered, considered and adjudged by the court that said petition of said minor, Minnie B. Armstrong, be, and the same is hereby, wholly approved and confirmed in all things, and it is further ordered, considered and adjudged by the court that all the rights of majority be, and the same is hereby, fully and finally conferred and bestowed upon said Minnie B. Armstrong, and she is hereby authorized and empowered by this judgment of the court to possess full authority and power the same as any other adult or person of full age and majority to transact any and all business with the same force and effect and consequence as if such acts and things and business were done and performed by a person who had attained the age of eighteen years as provided by the majority of females under the law and statutes in force in this state.

"Witness my hand as such judge, and the seal of this court at Bartlesville, Oklahoma, this the 5th day of June, A. D. 1908.
"(Seal)                        T. L. Brown.
"Judge of the Above Styled Court.
"Attest:   John B. Churchill,
"Clerk of the Above Styled Court."

We think the contention of plaintiff that the judgment was void is without merit. We think the same was valid, and not subject to collateral attack, and that the same conferred upon the plaintiff full and complete power and authority to make contracts and

to transact business of any character whatsoever, to the same extent as an adult person, except as to her allotted lands. Stat. 1893, p. 375; S. L. 1895, p. 180; Boykin v. Collins (Ala.) 37 South, 248.

The propositions that the plaintiff's deed to her grandfather was intended as a mortgage, and as to whether or not the defendant, Frank Phillips, was an innocent purchaser, will be considered together.

The trial court, in its sixth finding, in effect, found that the deed of the plaintiff to her grandfather was not intended by the parties to be a mortgage; that the evidence was not sufficient to overcome the presumption that the same was intended as a deed absolute, and the court found in paragraph 8 that the defendant, Frank Phillips, was an innocent purchaser for value, without notice of any defect in the title of said land.

We cannot say, from an examination of the record, that these findings of the court were clearly against the weight of the evidence, and the same are therefore approved

On the former appeal in this case, 76 Okla. 194, that on the mortgage question raised herein, this court correctly held that, under the facts of this case, section 4021, Rev. Laws 1910, was the applicable provision. It reads:

"When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the register of deeds of the county where the property is situated."

It is not contended that the provisions of this section were complied with; hence the defendant Frank Phillips' right to recover herein was full and complete, as the trial court held, and was not limited to the right to recover the purchase price of the land with accrued interest, and to have the deed foreclosed as a mortgage.

The judgment of the trial court is therefore affirmed.

HARRISON, C. J., and MILLER, KENNAMER, and NICHOLSON, JJ., concur.