## O'CONNER v. JOHNSON.

No. 15069—Opinion Filed May 20, 1924.

Rehearing Denied Sept. 30, 1924.

(Syllabus.)

1. **Indians — Contract of Minor for Attorney's Services—Invalidity.**

A contract made by a Creek Indian female allottee under the age of 18 years, whereby she employs and agrees to pay an attorney to appear for her in the probate court in which her allotted estate is being administered under control of her guardian, to assist her and her guardian in the sale of such allotted estate, such contract not having been sanctioned nor authorized by said probate court, is void by reason of public policy, and violates the protection accorded to minor Indian members of the Five Civilized Tribes under Act of Congress of May 27, 1908.

2. **Same — Grant of Majority Rights by State Court—Effect on Restrictions.**

Section 2 of the Act of Congress of May 27, 1908, defines minors "* * * and the term minor or minors, as used in this act, shall include all males under the age of 21 years, and all females under the age of 18 years." The granting of majority rights by the courts of this state to a female Indian allottee under the age of 18 years will not operate to change the status of such minor Indian allottee as to her rights, disabilities or restrictions touching her allotted estate.

3. **Contracts — Void Contracts — Ratification.**

A contract void in its inception is not capable of ratification so as to render it binding upon the maker.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Charles O'Conner against Virgie Childs Johnson. Judgment for defendant, and plaintiff brings error. Affirmed.

Poe & Lundy, for plaintiff in error.

M. A. Breckenridge and Chas. R. Bostick, for defendant in error.

GORDON, J. On the 12th day of February, 1923, plaintiff filed his amended petition. Thereafter defendant filed demurrer, general and special, and on the 6th day of October, this demurrer was sustained. Plaintiff stood upon his petition and the court ordered the petition dismissed. To the sustaining of the demurrer and the dismissing of the action, exceptions were duly saved by the plaintiff and notice of appeal was given, and the cause is here for review upon the judgment of the court sustaining such demurrer.

The parties will be designated as in the trial court. The petition alleges that plaintiff is a regularly licensed, practicing attorney in the state of Oklahoma, practicing the profession of law therein. That the defendant is a member of the Creek Tribe of Indians, enrolled as of three-eighths Indian blood, and that defendant became 18 years of age on November 16, 1920. That on or about the 10th day of March, 1920, defendant employed plaintiff as her attorney to counsel, advise, and appear for her in the matter of the proposed sale of an oil and gas mining lease upon certain of her lands, which said lands were the lands allotted to her by reason of her citizenship in the Creek Tribe of Indians. That defendant's estate was at that time being administered in probate in the county court of Tulsa county, Okla., and that the guardians of said estate were J. E. Miller and the Title Guaranty & Trust Company, a corporation. That on the 20th day of May, 1919, the district court of Tulsa county, by its order, conferred rights of majority upon the defendant. That the contract of employment of plaintiff by defendant was originally oral, and by the terms of such contract it was agreed that defendant should pay to plaintiff a liberal fee, to be determined and decided by her and to be based upon the amount for which defendant's oil and gas mining lease should sell, over and above the amount which defendant's guardian had agreed to accept therefor. Pursuant to said contract, the plaintiff did on March 13, 1920, prepare and file in said probate court, objections and protest of the defendant to the proposed sale of the oil and gas mining lease of the defendant at the price for which the guardians had arranged to sell the same. The plaintiff appeared in said probate court and obtained a continuance of the sale, and on the 10th day of April, 1920, when the matter came on for hearing, the proposed purchaser increased its offer from the original offer of $200,000 to an offer of $325,000, at which price the lease was sold.

On the 13th day of April, 1920, defendant gave to plaintiff a written contract of employment, fixing his fee for the services rendered, and for such other and further legal services as she might require of the plaintiff for the remainder of the calendar year 1920. The alleged written contract is as follows:

"Mr. Charles O'Conner,
   "Attorney at Law,
      "537 Mayo Bldg.,
         "Tulsa, Oklahoma.
"Dear Sir:

"I employed you to act as my attorney, and render services relative to the sale of oil and gas mining lease on my allotment, with the understanding that when I reached the age of 18 years I would pay you a liberal fee in proportion to the amount realized from the sale of said lease.

"The lease having brought $125,000 more than it was proposed to sell for, I agree to pay you for your services, and for any further legal services which I may require between now and January 1, 1921, the sum of twenty-five thousand dollars ($25,000). I will make this payment on reaching my 18th birthday, which will be November 16, 1920.

            "Yours very truly,
                  "Virgie Childs."

During the remainder of the calendar year 1920, plaintiff rendered legal services to the defendant from time to time and all legal services required of plaintiff by the defendant. The defendant became of full age, 18 years, November 16, 1920. Defendant at all times thereafter ratified and confirmed said contract and recognized her obligations thereunder, and promised to pay the plaintiff the sum of $25,000 as soon as her estate should be fully settled, and her property turned over to her. Defendant's estate was settled and her property turned over to her prior to the filing of the original petition herein, but defendant failed to pay the sum of $25,000, and there is now due and owing to plaintiff said sum from the defendant. Plaintiff prayed judgment for $25,000, with interest at six per cent. from January 10, 1921, and for costs.

The sole question presented here is whether this petition states a cause of action against the defendant. It is familiar law that in determining this question, the truth of the allegations of fact in the petition is admitted. At the time the oral contract of employment was entered into between the plaintiff and defendant, defendant was less than 18 years of age. By proper order of court, however, majority rights had been conferred upon the defendant, and

by such order she was empowered in all things to contract as though of full age, except that the power to contract as to her property is limited by the terms of the statutes of the United States, by virtue of which such property came to her.

Majority rights having, at the time plaintiff entered into his oral agreement with the defendant, been conferred upon the defendant, the defendant could, except in so far as limited by the federal law, contract with all the effectiveness with which she could contract if she had been of full age. The contract was valid, unless it is rendered void by reason of public policy arising out of an attempt to deal with an Indian regarding her restricted lands. The question before us, therefore, is whether this is such a contract as is inhibited by law or by general public policy. Plaintiff in his brief has to some extent simplified the question involved here in the statement contained on page 27 of the brief, which is as follows:

"We are not unmindful of the fact that our courts have held, and rightfully so, that neither the marriage of a minor Indian nor a decree of court removing his restrictions, has the effect of empowering him to deal with his allotment in any other manner than that prescribed in the act of Congress, and that the act of Congress defines minors, and that they cannot incumber, alienate, or convey their allotted lands until they actually become of age, notwithstanding their previous marriage or removal of disabilities of minority."

When Congress, on May 27, 1908, passed its act, by virtue of which the restrictions theretofore existing upon the alienation of their lands by members of the Five Civilized Tribes were in large part removed, such removal of restrictions was doubtless justified in the minds of the legislators upon the assumption that those members of the tribes possessing only the quantum of Indian blood specified might be presumed to have sufficient intelligence to properly safeguard transactions concerning such lands and estates and to deal with them with the same ordinary intelligence possessed by the average citizens of the United States.

When in this act Congress dealt with minors as defined in the act, and the second section thereof, it realized that the property of these minors must be safeguarded and protected to the fullest possible extent. There was no agency more competent or better equipped for this purpose than the county courts of the state of Oklahoma in the exercise of their probate jurisdiction, and therefore Congress provided in section 6 of the Act of Congress May 27, 1908, as follows:

"That the person and property of minor allottees of the Five Civilized Tribes, shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

By this provision and other provisions of the various acts of Congress touching such matters, all necessary machinery was furnished for the protection of the estates of such minors. The power was inherent in such probate courts to see to it that safe and proper guardians should be appointed, whose every act was under the supervision of the court. If in the judgment of these guardians, or of such courts, it was necessary that attorneys be employed to aid in the protection of such property, the selection of such attorneys was under the supervision of the court and the fees to be charged could be regulated by such courts. A sale of any portion of such estate could be accomplished only through the courts and with their approval. It is evident that the granting of rights of majority by the state courts could not be construed to affect the status of the Indian as to his property and his rights pertaining thereto as fixed by the acts of Congress, and this fact is frequently admitted by plaintiff in his brief as heretofore shown. Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Mortgage & Debenture, Ltd., Co. v. Bourroughs, 75 Okla. 94, 182 Pac. 238.

At the time plaintiff's contract was made with defendant, the defendant's estate was being administered in probate in the county court of Tulsa county and under proper guardianship in pursuance of the jurisdiction so conferred by the act of Congress aforesaid. Plaintiff was employed by defendant, without permission or sanction of court, to counsel, advise, and appear for her, defendant, in the matter of the sale of an oil and gas mining lease upon her allotment, which matter was in charge of her guardians in the probate court. Plaintiff was to perform such other services as defendant might require during the calendar year, but the substance of the contract was the appearance in court for the above purpose. No particular legal service is mentioned outside of this appearance, and the alleged ratification by the defendant makes it clear that the fee to be paid was in consideration of the success of the plaintiff in having caused the oil and gas mining lease to bring the sum of $125,000 more than it was proposed to sell it for. The contract was clearly entire and indivisible. Page on Law of Contracts, vol. 4, pars. 2083-2085; Mann v. Brady, 80 Okla. 299, 196 Pac. 346.

Was this contract such as contravenes the spirit of our policy of protection to the Indian? The case of Post Oak v. Lee, 46 Okla. 477, 149 Pac. 155, cited in plaintiff's brief, is in our judgment not in point here, and the contract involved did not pertain to the allotment. The court in that case said:

"The contract above set out was not within the restricted class."

The case of Hardridge v. Smith. 70 Okla. 218, 173 Pac. 818, is outside of the question here. In that case there was a conveyance made after the Indian had reached his majority and after all restrictions on his property had been removed. The court said that the Indian was of full age and as to such unrestricted property he might make such disposition as he saw fit, subject only to the ordinary rules covering such transactions.

The cases of McKinney v. Bluford, 81 Okla. 162, 197 Pac. 430; Armstrong v. Phillips, 82 Okla. 82, 198 Pac. 499; Barlow v. Soldofski, 84 Okla. 153, 202 Pac 1009, and Welch v. Ellis, 63 Okla. 159. 163 Pac. 321, deal with unrestricted lands and are not helpful in solving the question here. This court in the case of Mann v. Brady, 80 Okla. 299, 196 Pac. 346, has passed fairly upon the question of the public policy touching a contract with an Indian, and a real estate agent, who was employed as an agent or broker to find a purchaser for the Indian's land, a part of which land was at the time restricted by acts of Congress. The broker sued for his commission for obtaining a purchaser for these lands. The court held the contract void by reason of public policy. It was contended that the contract was divisible, and that while it might be regarded void as to that portion of the land which was restricted, it would be valid as to that portion of the land which was unrestricted, and that the broker would have the right to recover pro tanto. The court held, however, that the contract was indivisible, and further held that the contract, being illegal in part, was void in its entirety. In the opinion in this case Justice Miller likens the general policy of the government to that of a guardian with the purpose of protecting the Indian in the possession of the lands allotted to him. On page 301 of the opinion the Act of Congress of June 28, 1898, 30 Stat. 507, is quoted as follows:

"That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale heretofore provided, shall be null and void."

The clear holding in this opinion is that any contract which has for its object the sale or incumbrance of the land of an allottee in violation of any of the restrictive provisions of the acts of Congress pertaining to such allotment is void by reason of public policy. This case is followed by the case of Johnston v. Burnett et al., 81 Okla. 294, 198 Pac. 489, where it is held that a deed made by an Indian to effectuate a contract for the sale of his restricted lands entered into before the passage of the act removing such restrictions is void upon the basis of the reasoning in the case of Mann v. Brady. In the case at bar, the plaintiff seeks to differentiate his contract from a contract entered into for the sale of lands restricted under the act of Congress. In the case before us there is no direct restriction upon the sale of the minor's land, except that jurisdiction thereof is conferred upon the probate courts. Restrictions have in fact been removed from the sale of the lands of those Indians of the quantum of blood possessed by the defendant here, but the Act of Congress of May 27, 1908, has provided one, and only one method, whereby the lands of these minors may be sold, and that method is under and through the jurisdiction of the probate courts. This provision is tantamount to a restriction upon the sale, and so far as public policy goes, a violation of the provision places the one attempting to violate it in the same position as if there had been an attempted violation of an actual prohibition against the sale of the land. At the time this contract of employment was entered into, defendant with reference to the subject-matter of the employment was a minor. The machinery provided by the act of Congress for the protection of this Indian's property was in operation and the probate court was functioning with reference thereto. If defendant had the authority to employ her own counsel to negotiate for this sale, such counsel under such employment must have had some authority to act for plaintiff, but under the act of Congress above mentioned the sole authority to act for defendant was vested in the probate court, and in her duly constituted guardians. If under these circumstances this Indian ward were to be permitted to make a valid contract with parties other than those so authorized to act, the very object of the law would be frustrated.

"The policy of the government is to exercise a protecting control over the Indian, and his lands, and any contract made in disregard of that policy which cannot be carried to full fruition because of such governmental protection is void." Mann v. Brady, 80 Okla. 299, 196 Pac. 346.

It is contended by plaintiff that the defendant was, by the act of the state confer-

ring majority rights, of full age at the time this contract was made, and that while she could not bind her estate in process of administration, she could bind herself personally; that, therefore, he is entitled to judgment for the sum of $25,000 agreed to be paid by the defendant, such judgment to be a personal judgment only. To approve such a theory would be, in effect, the taking of so much of the estate in process of administration. If judgment should be had, it would be easily enforceable out of the large estate of the minor when turned over to her after settlement in the probate court, at her majority, and her estate would be thereby depleted to this extent. It therefore seems to us that this contract is against the spirit of the law, and is calculated to take away from the Indian that protection which the government intended to afford, and therefore that contract is void as against public policy.

It is contended that this contract was ratified by the defendant after she became of full age. If, however, the contract was initially void, it cannot be ratified. Handy v. Globe Pub. Co. (Minn.) 4 L R A. 466; Carlisle Oil & Development Co., 83 Okla. 217, 201 Pac. 377; Pruitt v. Oklahoma Steam Baking Co., 39 Okla. 509. 135 Pac. 730.

Considerable stress is laid by plaintiff upon the benefit accruing to the minor by reason of his services, in that, as is alleged, the price which the minor received for her oil and gas lease was largely in excess of that she would have received except for his services. It may be unfortunate that plaintiff cannot recover where his services have been of large value, but the result of the efforts made under the contract cannot affect the validity or invalidity of the instrument. It was either void or valid in its inception. We are therefore constrained to hold that the trial court did not err in sustaining defendant's demurrer, and the judgment of the trial court will be affirmed. It is so ordered.

JOHNSON, C. J., and NICHOLSON, LYDICK, and WARREN. JJ., concur.