## McLAIN v. OKLAHOMA COTTON GROWERS' ASS'N.

No. 16981.    Opinion Filed June 28, 1927.

(Syllabus.)

1. Pleading—Petition — Objection to Introduction of Evidence for Insufficiency.

Where a petition on its face shows that it is based on a void contract and for that reason could not support a judgment of recovery or other relief. an objection to the introduction of evidence thereunder on the grounds of insufficiency of the petition to state a cause of action has the effect of a demurrer, and where it is apparent that in such case an amendment would not cure such defect, it is error for the court to overrule such objection timely interposed.

2. Contracts—Void Contracts — Enforcement.

In an action brought in which it is necessary to prove a void contract in order to maintain the action, courts will not enforce it, nor will they enforce alleged rights directly springing from such contract.

3. Contracts—Void Contracts—Ratification—Estoppel.

A contract void in its inception as in violation of law is incapable of ratification, and the fact that performance has been had thereunder will not operate as an estoppel to assert its invalidity in an action for a breach thereof.

4. **Constitutional Law—Law Impairing Obligation of Contracts—Curative Statutes.**

Curative legislation is valid, where its operation extends to transactions voidable or unenforceable by reason of defects not inhering therein, but where a given transaction is void by reason of its being in violation of law, the Legislature is without power of validation. Section 2 of chapter 181, S. L. 1923, in so far as it may attempt to vitalize contracts void as in violation of law entered into by bodies corporate organized under the parent act with private parties prior to the amendment, is unconstitutional and void as being the exercise of legislative power to impair the obligation of contracts, prohibited by section 15 of article 2 of the state Constitution.

Commissioners' Opinion, Division No. 1.

Error from District Court, Kiowa County; E. L. Mitchell, Judge.

Action by the Oklahoma Cotton Growers' Association against R. E. McLain for $245.96 as liquidated damages for breach of contract, and for specific performance and injunction from further breach thereof. Judgment for plaintiff, and defendant brings error. Reversed, and remanded.

George L. Zink and Clayton Carder, for plaintiff in error.

H. H. Edwards and Tolbert, Hunter & Tolbert, for defendant in error.

TEEHEE, C. This was an action of covenant brought October 24, 1924 by the Oklahoma Cotton Growers' Association, a domestic corporation, as plaintiff, defendant in error here, against R. E. McLain, a member of the association, as defendant, plaintiff in error here, to recover the sum of $245.96 as liquidated damages, and an additional sum of $75 as attorney's fees, for specific performance and for injunctive relief according to the terms of the association agreement, hereafter referred to as the contract, entered into and executed by the parties on January 7, 1921, which contract is set forth in full by exhibit in the petition. The parties will hereinafter be referred to as they thus appeared in the trial court.

Plaintiff was organized pursuant to the provisions of chapter 22, S. L. 1917, now article 16, ch. 34, C. O. S. 1921, as thereunder authorized, to promote, foster, encourage, and stabilize the cotton industry of the state in its varied phases. To that end it entered into the contract, upon which this action was based, with the defendant, R. E.

McLain. This in substance, provides that the corporation shall be composed of cotton growers, with its business thereunder governed by a board of eleven directors, ten of whom were to be selected from designated districts, and one named by the president of the State Board of Agriculture, with local branches in each district. The membership fee was fixed at $10. The association was to confine itself to the problems and marketing of cotton for its members, with suitable by-laws fixing the rights and duties of members, the manner of forfeiture of membership, withdrawal, and expulsion from the association, and that under certain limitations of membership. the contract was to be binding with no right of withdrawal. The association was to organize the Oklahoma Growers Warehousing Corporation with common and preferred capital stock in such amount as would be sufficient to furnish funds to handle, treat, process, warehouse, or store cotton of its members, such service to be on a nonprofit basis. The association contract included a marketing agreement, whereunder the association agreed to buy and the grower agreed to sell and deliver to the association all cotton produced or acquired during the years of 1921 to 1927, inclusive, and the association covenanted to resell such cotton for its members, the cost of such service not to exceed 4% of the gross resale price; that such marketing agreement is one of a series similar in terms, and together with such series constituted a single agreement between the parties and provides for liquidated damages upon breach on the basis of five cents per pound of all cotton otherwise marketed, for an injunction to prevent further breach, and for specific performance, and for all costs, expenses, and attorney's fees incurred in any litigation in the enforcement of the terms of the association contract.

By suitable allegations the organization of the association and the terms and conditions of the contract above outlined were contained in plaintiff's petition, and it further alleged performance of the contract on its part, and that defendant breached the same in the year of 1924, and upon such further suitable allegations prayed for judgment in the sum of $245.96 as liquidated damages, $75 as attorney's fee, for injunctive relief, and for specific performance as by the terms of the contract provided. Upon the filing of the petition a temporary injunction was allowed.

The issues were made up under an amended answer of general denial, but

which admitted the organization of the association and the execution of the contract as alleged, and further charged mismanagement and breach of trust whereby defendant suffered loss in his compliance with said contract during the year 1923, deception inducing the execution, and certain violations thereof, to the prejudice of defendant, failure of such association to function in accordance with certain specified details, and that said contract was unilateral and not enforceable, and that by reason of the several defenses the defendant was released from said contract, and that therefore plaintiff was not entitled to the relief prayed for, to all of which new matter the plaintiff filed its replication in traversement thereof. At the trial defendant objected to the introduction of any evidence by the plaintiff on the grounds that plaintiff's petition was insufficient to constitute a cause of action, which was by the court overruled and exceptions saved. On May 20, 1925, judgment for the plaintiff was rendered in accordance with its prayer.

Defendant complains of the action of the trial court under two propositions: First, that the court erred in overruling his objections to the introduction of any evidence by the plaintiff upon the grounds of the insufficiency of the petition to state a cause of action, and, second, that the evidence is insufficient to support the judgment of the court.

Subsequent to the trial of this cause, this court, in Oklahoma Cotton Growers' Association v. Salyer, 114 Okla. 77, 243 Pac. 232, which in effect may be considered as a companion case, held the identical contract on which the cause at bar was based, unenforceable and void, on the ground that the same was in violation of the provisions of law whereunder the plaintiff there, now plaintiff here, was organized. Upon this case defendant relies and urges that it fully disposes of his appeal in his favor under the first proposition.

Plaintiff contends that the Salyer Case is not conclusive of this appeal for the reason that an amendatory act of the original law whereunder the association was organized is controlling, and thereunder the contract involved, if it prior thereto was unenforceable, was validated. The act relied on is chapter 181, S. L. 1923. Thus the questions are by the plaintiff raised: First, that the defendant ratified the contract subsequent to the enactment of the amendatory law, and that the Legislature had the power to validate the contract, and therefore, under

the record, the judgment of the trial court should be sustained.

In the Salyer Case, the sufficiency of the petition to state a cause of action was challenged by demurrer, which was by the court sustained. Plaintiff refused to further plead and elected to stand on its petition, whereupon the court rendered judgment of dismissal of the action. Upon appeal the judgment of the trial court was affirmed upon the principles as hereinafter set out. The petition was, in substance, as to essentials, identical with the petition in the case at bar. The attack went to the validity of the contract. In that case the breach occurred prior to the amendatory act, but the action was not brought until subsequent thereto. In the cause at bar the breach occurred subsequent to the amendatory act, and for this reason, as well as performance by defendant thereunder subsequent and the validation of the contract by the Legislature, if the same was theretofore illegal, plaintiff undertakes to distinguish the principles urged by defendant as controlling in this appeal from the Salyer Case. In that case, upon the subject of the validity of the contract, this court, in paragraph 2 of the syllabus, held as follows:

"Where the primary principle of an act is to authorize the formation and incorporation of mutual associations, the moving principle of such act being the mutuality of obligations, within the specific provisions and limitations of such act, a contract entered into in violation of such provisions is unenforceable and void for lack of mutuality.

"Where an act provides that an association may adopt by-laws compelling a member of such association to sell all his products exclusively through such association, but specifically provides that the conditions upon which such obligation may be enforced must be based upon condition that a member be granted an opportunity to withdraw from membership, and the articles of incorporation and by-laws of such association contain provisions for forcing a member to sell exclusively through the association, but fail to give such a member an opportunity to withdraw from the association, such obligation is in violation of the statutes and cannot be enforced for lack of mutuality.

"Where the statutes provide that an association may adopt by-laws providing for liquidated damages for breach of an agreement, but specifically provide that the condition upon which such an obligation may be enforced shall be based upon a member being given an opportunity to withdraw from the association, upon proper notice,

and where such articles and by-laws provide for the payment of liquidated damages, but fail to provide for an opportunity to withdraw upon proper notice, such liquidated damages cannot be enforced for failure to comply with conditions precedent, nor is such association entitled to relief in equity by injunction from further breach, nor for a decree of specific performance."

As to the effect of the amendatory act, which also was there as here urged as controlling, in paragraph 1 of the syllabus, the court said:

"The existing statutes and the settled law of the land at the time a contract is made become a part of it and must be read into it.

"All contracts are formed to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties: the laws upon the subject of a contract are read into it and become a part thereof to the same extent as though they were written into its terms.

"Where parties enter into a contract by virtue of authority derived from a certain act in view of such rights as are created, defined, and conferred by such act, it is elemental that the rights of the parties must be construed by the provisions of the act.

"Where a contract is entered into under such provisions and conditions, and such contract is alleged to have been breached while such act is still in force, then if any provision or terms contained in such contract are in violation of rights conferred by such act, which are remedied by a subsequent act, such subsequent act is void as to such provisions and violative of section 15, art. 2 (Bill of Rights) of the Constitution, as tending to violate the obligation of contracts.

Whether or not these principles dispose of this appeal depends upon the effect of the breach and performance of the contract by defendant subsequent to the amendatory act, and the effect of the validating provision upon the contract here involved.

Upon the sufficiency of the petition in the Salyer Case to state a cause of action, the court, by paragraph three of the syllabus, held:

"Where a petition for liquidated damages, for injunction against further breach, and for specific performance, shows on its face that plaintiff has not complied with conditions precedent, such petition is subject to demurrer for failure to state a cause of action in law, or to state grounds for relief in equity."

The amendatory act, in effect, is a complete substitute for the original act. The purposes and the powers of associations organized under the original law, as analyzed in detail by the court in the Salyer Case and which were embodied in the existing law under general terms, were made clearer and by detail amplified in the amendatory act and need not here be entered into, as the contract in the case at bar was in no wise affected thereby, except as it may have been brought within the provisions of the saving clause contained in section 2 of the new law, for there is no language otherwise appearing in the entire act which by fair intendment shows that the Legislature removed or dispensed with the fatal defects which, it may be said, then inhered in the contract as pointed out in the Salyer Case. Under the statement of counsel for plaintiff in this court it appears that the circumstances attendant upon the execution of the contract here involved have in no wise been modified to alter such circumstances in their relation with the contract involved in the Salyer Case. The saving clause contained in said section 2 of the amendatory act is as follows:

"And co-operative associations, not having capital stock, now existing in Oklahoma, exercising, or attempting to exercise, corporate rights and powers, or to perform duties as a corporation, for the purpose or any of the purposes aforesaid, are hereby validated, and are granted all of the rights and powers, and subjected to all of the restrictions and limitations, of this act, as herein amended; and are granted for the enforcement of existing as well as subsequent contracts, all of the rights and remedies herein provided."

The legislative language, if of value to the plaintiff, imports that there may have been defects inhering in the association, the plaintiff in this case, whereby its contracts may have been rendered unenforceable and thus were resolved into voidable contracts. There was no contention that the defect upon which the Salyer contract was pronounced void inhered in the organization, nor is such contention made in the case now under consideration. The contract, therefore, does not rest upon a defect inhering in the association rendering its contracts voidable, hence the controlling principle of curative acts validating that class of contracts relied upon by plaintiff can have no application.

In order to sustain its case it was necessary for plaintiff to prove the contract on which its action was based. Without it

there could have been no recovery. This identical contract had been held to be unenforceable and void. The interdictions thereagainst had not been removed under the record in this cause and the statement of counsel for plaintiff, unless this was otherwise accomplished under the other contentions of plaintiff which will hereinafter be noticed.

It is well settled in this state that;

"In any action brought in which it is necessary to prove an illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce alleged rights directly springing from such contract." Citizens Nat. Bank of Chickasha v. Mitchell, 24 Okla. 488, 103 Pac. 720, 20 Ann. Cas. 371; First Nat. Bank of Maud v. McKown, 73 Okla. 310, 176 Pac. 245; McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 851, 43 L. Ed. 1117; 6 R. C. L. 816, par. 215.

In First National Bank of Maud v. McKown, supra, the court, quoting from McMullen v. Hoffman, in stating the reason for the rule, said:

"To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly toward reducing the number of such transactions to a minimum. The more plainly parties understand that, when they enter into contracts of this nature, they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

In these circumstances it is clear that plaintiff's petition on its face fails to show a right of recovery, and since its sufficiency rests upon a void contract it could not have been amended to meet the fatality.

While it is not the proper practice, yet,

"Where the petition fails to show any right of the plaintiff against the defendant for the relief sought, the defendant may, at the trial of the case, before any evidence is introduced, object to the introduction of any evidence in plaintiff's behalf, and the overruling of such objection, if excepted to, is error for which the case will be reversed." Lankford v. Schroeder, 47 Okla. 279, 147 Pac. 1049; Hilton v. Bailey 46 Okla. 759, 149 Pac. 863.

It must therefore follow, that the trial court erred in overruling objections timely interposed by defendant to the introduction of any evidence by plaintiff, unless, as already indicated, the conduct of the defendant by performance under the contract subsequent to the amendatory act effected a ratification, wherein plaintiff says of the defendant that "he is estopped because he held the contract out as valid and recognized and acquiesced in it."

The contract being void, was it capable of ratification by performance thereunder?

"Ratification in its correct sense is impossible equally of an illegal and of a void contract." Pruitt v. Okla. Steam Baking Co., 39 Okla. 509, 135 Pac. 730; Carlile v. National Oil & Development Co., 83 Okla. 217, 201 Pac. 377; O'Connor v. Johnson, 107 Okla. 5, 229 Pac. 146; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; 2 Page on Contracts 1832, par. 1038.

In Pruitt v. Okla. Steam Baking Co., supra, the court, in addressing itself to this proposition, said:

"When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence, or to its action, because such requisites might in fact have been complied with. But when a contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to say that it was prohibited by those laws. Neither can the contract be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action based upon it."

This was the principle laid down by the national court. It clearly appears, therefore, that the defendant, in the circumstances of the case, could not, by performance in accordance with its terms, ratify the contract, nor was he estopped from asserting its invalidity.

Since the contract was incapable of ratification, what effect therefore did the saving clause in section 2 of the amendatory act have thereupon? In Oklahoma Cotton Growers' Association v. Salyer, supra, as noted, this court in paragraph one of the syllabus, held that the amendatory act, if the contract was affected thereby, was void as tending to violate the obligation of contracts, in contravention of section 15 of article 2 of the state Constitution.

Plaintiff urges that the case at bar is distinguished from the Salyer Case, in that the

breach occurred subsequent to the amendatory act, and that, therefore, the principle thus laid down in that case is without application. The effect of this contention is that the state of things existing with reference to the contract involved in the Salyer Case had been altered or modified by force of the amendatory law being in force at the time of the breach in this case. As already pointed out, there was no language of the amendatory act whereby it could be said that the circumstances surrounding this transaction could in any wise be modified from those affecting the transaction in the Salyer Case. For that reason we think the fact that the breach occurred at the time indicated is immaterial. This court has said that a like contract was void. This court has likewise said that a void contract was incapable of ratification by the parties thereto. Hence, as between the parties in the case at bar, there was no existing and subsisting contract for validation.

In Plank-Road Company v. Davidson, 39 Pa. 435, there was involved a curative act which "legalized and made valid" subscription contracts which had become null and void by failure of the company to perform in compliance with the statute whereunder it was organized. The court held that:

"A contract which has become void by force of its inherent conditions, cannot be reinstated by an act of Assembly."

In the course of the opinion, the court said:

"A contract is an agreement between parties, made by themselves. The Legislature makes laws; but laws are not contrac's: their natures are essentially different, and cannot be confounded. The Legislature could not make such a contract for the parties, nor impose on the defendant the duty of subscribing; and we do not suppose they intended to do so."

In Denny v. McCown, 34 Ore. 47, 54 Pac. 952 there was involved a mortgage void at its execution by reason of its having covered real estate situated in two count.'s in contravention of law. The Legislature by subsequent act removed this objec'ion by consolidating the two counties whereby the property involved was brought within one county, and repealed the interdicting law, and thus it was contended that the mortgage was validated and subject to foreclosure. The court held that:

"No statutory ratification or subsequent legislation can make valid a contract that was null and void at i's inception."

In Strosser v. City of Ft. Wayne, 100 Ind. 443, there was involved a curative statute which undertook to validate certain annexation proceedings by the city. It was held that the Legislature was without power in the premises since such proceedings were void. The court, in dealing with the subject at length, quoted with approval from Sedg. Stat. Cons. (2nd Ed.) 143, this language:

"It is a general principle, that when an act, proceeding, or transaction is void, and not merely voidable on account of some formal defect, it can not be cured by legislative action; whatever discrepancy in the decided case exists—and there is much discrepancy—seems to result from disagreement as to what constitutes an essential defect rather than from any disagreement as to the principle itself."

It, of course, is not now doubted that the Legislature, unless otherwise restricted by constitutional provision, has the power to enact curative laws for the enforcement of existing contracts, to cure defects in the remedy, confirm rights already existing, and add other means of securing and enforcing them. 6 R. C. L. 305, par. 291. But where the defects inhere in the transaction as being in violation of law and thus void and incapable of ratification, as here, it must follow as a legal proposi:ion that attempted legislative establishment of a contractual relationship between private parties where none theretofore existed would be an assumption of power not given to the Legislature by express constitutional provision, and no one would contend that under its implied power the Legislature has the authority to make private contracts, for its function is that of the enactment of laws and to prescribe rules under which such contracts may be entered into. If this be not the correct rule, then it would follow that the validating provisions of the amendatory act here involved would, in effect, be a legislative direction to the judiciary to change its interpretation of the law in the given case, a proposition that in its application would be subversive of the fundamentals upon which the superstructure of popular government has thus long endured, to which no one under our plan of social order would subscribe.

Our conclusion, therefore, is that this contention of plaintiff is without force, and that the principle laid down in the Salyer Case is here controlling.

There are several other phases of the Salyer Case challenged by plaintiff, and by it urged upon us for reconsideration, but upon examination, and in view of the conclusion here reached, we are not inclined to a re-

view thereof. Accordingly, the judgment of the district court is reversed, and the cause remanded, w.th instructions to dismiss the action.

BENNETT, MONK, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 31 Cyc. pp. 759, 760. (2) 13 C. J. p. 493, §440; p. 503, §445; 6 R. C. L. p. 816; 2 R. C. L. Supp. p. 211; 4 R. C. L. Supp. p. 442; 6 R. C. L. Supp. p. 411. (3) 13 C. J. p. 506, §§452, 453. (4) 12 C. J. p. 1060, §710; 6 R. C. L. p. 361.