## POSTOAK v. LEE.

No. 3999.  Opinion Filed May 18, 1915.

(149 Pac. 156.)

1. **INDIANS—Contracts Affecting Allotments—Restrictions—Contract to Pay Attorney's Fees.** The restrictions against the right of full-blood Indians to contract are limited to contracts affecting their allotments. An adult, full-blood Mississippi Choctaw Indian, otherwise qualified, may make a lawful contract to pay attorney's fees for proper professional services.

2. **APPEAL AND ERROR—Judgment—Evidence.** Where the only error assigned on appeal in a law case, tried to the court, is that the evidence is insufficient to support the judgment, the Supreme Court will not weigh the evidence, but, if it be found that there is any evidence reasonably tending to support the judgment, will affirm the same.

(Syllabus by Galbraith, C.)

*Error from District Court, Carter County;*

*S. H. Russell, Judge.*

Action by Albert J. Lee against Jack Postoak. Judgment was for the plaintiff, and defendant appeals. Affirmed.

*Wm. J. Gregg, John B. Meserve* and *Carter Smith,* Asst. U. S. Atty., for plaintiff in error.

*Cruce & Cruce,* for defendant in error.

GALBRAITH, C.   This action was commenced in the trial court to recover $1,000, as an agreed fee for professional services, rendered before the Department of the Interior in the matter of making proof of the removal and settlement to the Choctaw-Chickasaw Nation of Bessie Postoak, a deceased Mississippi Choctaw Indian.   There was a contract, also a promissory note, as evidence of the agreement to pay this fee.   The defendant pleaded the want of capacity of Jack Postoak to make the contract and note, and also a failure of consideration.   A jury was waived, and the cause tried to the court.   There was a finding for the plaintiff, and judgment was entered against the defendant for the amount of the claim and interest.   To review this judgment the defendant has perfected an appeal to this court.

While a number of errors are assigned, it is stated in the brief of plaintiff in error that:

"The sole question which will be presented by this brief is the insufficiency of the evidence to sustain the judgment for the defendant in error."

It appears from the evidence that the plaintiff in error is a full-blood Mississippi Choctaw, and that the defendant in error was an attorney at law, with offices at Ardmore, Ind. T., and that the plaintiff in error was having some difficulty in perfecting his right to an allotment of land in the Indian Territory, and also in securing allotment for his deceased wife, and also for two of his children, and for that reason employed the defendant in error.   The contract involved in this suit was as follows:

"Contract.

"United States of America, Indian Territory, Southern District.

"I, Jack Postoak, the undersigned, hereby authorize and employ Albert J. Lee, an attorney at law, to represent me before the Department of the Interior in the matter of making proof of the removal to and settlement in the Choctaw-Chickasaw country of Bessie Postoak, a deceased Mississippi Choctaw Indian, who died before making such proof, and of whom I am a legal heir, and for his services in this matter, and in consideration of his services heretofore rendered in connection herewith, I agree to pay him the sum of one thousand dollars, as evidenced by my promissory note of even date herewith bearing interest at the rate of 8 per cent. per annum until paid.

"In witness whereof I have hereunto set my hand this 2d day of May, 1906.

"[Signed]    Jack Postoak."

This contract, upon its face, seems to be entirely lawful. The subject-matter, professional services "heretofore rendered and to be rendered," before the Department of the Interior "in the matter of making proof of the removal to and settlement in Choctaw-Chickasaw Country," etc., was a proper subject of contract. The parties were adults, and ordinarily competent to contract. It is, however, contended by the plaintiff in error that Jack Postoak had no right to enter into this contract because he was a full-blood Mississippi Choctaw Indian. This contention is not well taken. The fact that one of the parties to the contract was a full-blood Indian did not incapacitate him or impair his right to enter into this contract. He had the same right as other persons to make contracts generally. The only restriction on this right peculiar to an Indian was in regard to contracts affecting his allotment. These he could not make without the consent and approval provided by law. The contract above set out was not within the restricted class. Again, it is contended that a part of the services, those "heretofore rendered," were for securing legislation by the United States Congress, and were for lobby services, and an agreement to pay for such was contrary to public policy and good

morals ·and void. It does not appear from the face of the contract that any part of the services rendered, or to be rendered; were 'for' lobby services and within the rule declaring a contract to pay for such service to be unlawful as against public policy and good morals.· If it were otherwise, it does not follow that the contention is correct, since it will hereafter appear that a lawful contract may be made for professional services rendered in securing legislation. It is also contended that no actual service was rendered by the defendant in error, and therefore there was a total failure of consideration for the note and contract. The only person testifying, as shown by the records, as to the character of service rendered, was the defendant in error, and in order to show the character of that service we quote his testimony, in part, as set out in the brief of plaintiff in error.

"In the capacity of attorney for these people, I appeared to ask if it was the holding of the Commission that the heirs of Mississippi Choctaws could not make proof of settlement, and was told that was the holding in the Frank Lewis Cases and other cases, and that he saw no reason why it should be changed. The Attorney General had held that the heirs of Mississippi Choctaws could not make proof of removal and settlement where one had died before making that proof. My next service was in Washington City. Mr. Bixby was there, and I again put the matter before him, and he gave me no encouragement. There was no petition filed with Mr. Bixby. I then went to Commissioner Ruef, and he referred me to acting commissioner, and he told me that the Attorney General had held that the heirs of these deceased Mississippi Choctaws could not make the proof, and he saw no reason why it should be changed. I then went to Judge Ryan, who is now in Muskogee, and he told me, unless it came to him in a recommendation from the Indian agent, he could not take any action. The time was drawing to a conclusion, and I appeared before the subcommittee of the Senate Committee on Indian Affairs, which was then in session, Mr. Bixby being present, and stated to the committee what I had run up against in these cases—the holding ·of the Department—that I represented these people, and that there ought to be some provision included in the bill to take care of it. They discussed it for a moment with Mr. Bixby, and finally they turned to me and directed me

to draw an amendment to the bill then pending, to allow the heirs to make proof, and I drew that amendment, and it is a part of the act of April 26, 1906, in the exact words that I wrote it, except that they added that the action of the commissioner should be final. They gave 60 days to make the proof after the passage of the bill, and the important thing was to get it in the 60 days. Q. Now, after you returned, did you do anything? Appear before the Commission or take any steps towards enrolling Bessie Postoak? A. I saw that she made her proof. I am not sure that I appeared in the case. The reason I state it is I don't know whether it applies to each case. I did see that each of these persons went to the Land Office and made their proof. In one of the first instances, I notice that the clerk— Q. I am directing your attention to this case. In this case, did you appear before the Commission and file any papers in behalf of Bessie Postoak? A. No; I filed no papers. I don't say that I didn't appear; I may have appeared. Q. Well, I mean to say, and I thought you understood it, after the passage of the act of April 26th? A. After the act of April 26th, I appeared at the Land Office. I may not have filed any papers, but I appeared with them there and saw that their proof was taken. * * * Q. What were you trying to do for them? A. I was trying to secure for these people a right, which I considered they were entitled to, in the tribal property of the Choctaw Indians."

The testimony above set out shows that the defendant in error did render some service; that the object of his employment was accomplished; that Jack Postoak secured an allotment of land for his deceased wife. Although counsel did not appear in person before the agent of the Interior Department at the taking of the testimony and proof of removal from Mississippi to Indian Territory and settlement on the land, he claims that he procured Postoak to appear at the time and place required, with his witnesses, and that the necessary proof was made. The record supports this claim. The compensation agreed upon, as we look at it, was extremely liberal for the services actually rendered, still that is not a question properly submitted to this court for determination. Some service was rendered, sufficient, it seems, to accomplish the object of the employment. The contract was therefore not

Form No. 16

without consideration. The judgment of the trial court is supported by the evidence, and is therefore conclusive upon this court.

Counsel for the plaintiff in error overlooked the fact that this contract does not provide for lobby services of any character. It stipulates a consideration to be paid for services "hereinbefore rendered and to be rendered," before the Department of the Interior in connection with the allotment of Bessie Postoak, and for that reason it does not come within the class of contracts that are prohibited as being against public policy. In *Burke, Ex'r, etc., v. Child,* 88 U. S. (21 Wall.) 441, 22 L. Ed. 623, after condemning a contract which provided for compensation for securing the allowance of a claim against the United States by Congress, and the payment of 25 per cent. of the amount as compensation, as being within the class of prohibited contracts, it was said:

"We entertain no doubt that in such cases, as under all other circumstances, an agreement, express or implied, for purely professional services, is valid. Within this category are included drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them, orally or in writing, to a committee or other proper authority, and other services of like character. All these things are intended to reach only the reason of those sought to be influenced. They rest on the same principle of ethics as professional services rendered in a court of justice, and are no more exceptionable."

It was contended at the oral argument that the provisions of the act of Congress of August 1, 1914 (Stat. at Large, 2d Sess. 63rd Congr. pt. 1, p. 601), rendered this contract and note absolutely void. We cannot agree with this contention. That provision (section 17), reads, in part, as follows:

"Unless the consent of the United States shall have previously been given, all contracts made with any person, or persons, now or hereafter applicants for enrollment as citizens in the Five Civilized Tribes for compensation for services in relation thereto, are hereby declared to be void and of no effect," etc.

It is clear that this provision did not apply to the contract involved in this action, for two reasons, at least: First, Jack Postoak was not then an applicant for enrollment; he had already been enrolled a member of the Five Civilized Tribes. Second. The contract had, at the time of the passage of that act, merged into a judgment. This provision was evidently intended to apply to the persons mentioned in the earlier part of the act who were authorized to be enrolled by the Secretary of the Interior as members of the Five Civilized Tribes.

We therefore, recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.