## STATE ex rel. MUDD v. COUNTY COURT OF OSAGE COUNTY et al.

No. 25204.   May 15, 1934.

Rehearing Denied June 19, 1934.

Wm. M. Thomas, for petitioner.

H. P. White and Leander Hall, for respondent.

Louis N. Stivers, Osage Tribal Atty., Osage Indian Agency, amicus curiae.

SWINDALL, J. Petitioner, Mildred Leitner Mudd, seeks a writ of prohibition against respondents, the county court of Osage

county, Okla., and Henry Wood, judge of the county court of that county, from proceeding in certain probate proceedings commenced in Osage county, Okla., to probate the will of Alex Mudd, an allottee of the Osage Tribe of Indians, who died testate out of the state of Oklahoma, and who was not a resident thereof at the time of his death. The petitioner, in her petition for writ of prohibition against the respondents, alleges, among other things, that she is the widow of Alex Mudd, deceased, and the principal beneficiary named in the last will and testament of Alex Mudd, deceased, dated February 28, 1930, and therefore is a real party in interest in this matter; that, on September 2, 1931, she filed a petition for the probate of an alleged will made by Alex Mudd on August 26, 1931, in the county court of Ottawa county, Okla., cause No. 2065; that notice of hearing upon said petition was given as required by law and a copy of same served upon the Superintendent of the Osage Indian Agency, at Pawhuska, Okla., at the time of filing of same; that in said cause No. 2065, of the county court of Ottawa county, Okla., on the 2nd day of October, 1931, she filed her petition, asking for the appointment of a special administrator for the purpose of preserving the estate and attending to the business of said estate pending the appointment and qualifications of an executor or administrator with will annexed; that on the said 2nd day of October, 1931, the county court of Ottawa county, Okla., appointed C. H. Mullendore, of Miami, Okla., Ottawa county, special administrator in said cause.' That he filed his oath and bond as required by said order, and letters of special administration were issued to him on the 2nd day of October, 1931. That on the 1st day of September, 1933, petitioner filed in cause No. 2065, in the county court of Ottawa county, Okla., her amended petition for the probate of said will, asking that the will in question in these proceedings, being the will dated February 28, 1930, be admitted to probate as the last will and testament of Alex Mudd, deceased. Petitioner alleges in her petition to probate said will that Alex Mudd, at the time of his death, was a resident of Colorado Springs, Colo., and that he left estate in Ottawa county, Okla., subject to administration. She further alleges that thereafter, and on the 30th day of October, 1933, one C. K. Templeton, being the person named as executor of the said will of Alex Mudd dated February 28, 1930, filed a petition for probate of said will in the county court of Osage county, Okla., in cause No. 3919, in

that court, same being the will described in the amended petition for probate of will filed in the county court of Ottawa county on September 1, 1933. Petitioner further states that an order was made setting said petition for hearing in the county court of Osage county, and notices were given thereon, wherein said hearing was set for November 15, 1933. Petitioner alleges that on the 15th day of November, 1933, she filed in the county court of Osage county her special appearance and motion to dismiss the said petition filed in Osage county for the reason that the county court of Ottawa county had exclusive jurisdiction to probate said will, because her petition for probate of said will was filed in the county court of Ottawa county some two months prior to the filing of said petition for probate of said will in Osage county; that, therefore, the county court of Osage county did not have jurisdiction to proceed upon said petition for probate of said will filed in that court. Upon the county court of Osage county denying said motion and attempt to further proceed in said probate proceedings, petitioner commenced this action to prohibit the county court of Osage county, Okla., from further proceeding in the probate proceedings in that court. This court took jurisdiction and granted an alternative writ.

The respondents have filed their response, and the case has been briefed by the respective parties and the Osage tribal attorney, who has been granted permission to file a brief amicus curiae.

Several acts of Congress are referred to in the respective briefs, but it appears to us that the Act of Congress of April 18, 1912, is determinative of the jurisdiction of the county courts of this state to administer the estates of deceased allottees of the Osage Tribe. By the terms and provisions of section 3, chapter 83, of the Act of Congress of April 18, 1912, 37 U. S. Stats. at Large, p. 86, the county courts of the state of Oklahoma are granted power and jurisdiction to administer the estates of deceased allottees of the Osage Tribe of Indians in Oklahoma. That section requires that a copy of all papers filed in the county court in such proceedings shall be served on the Superintendent of the Osage Agency at the time of filing, and said Superintendent is authorized, whenever the interests of the allottee require, to appear in the county court for the protection of the interest of the allottee. There is a proviso in section 7 of said act:

472

"That inherited moneys shall be liable for funeral expenses and expenses of last illness of deceased Osage allottees, to be paid upon order of the county court of Osage county, state of Oklahoma."

In our opinion this proviso in no way determines the jurisdiction of the county courts of the state of Oklahoma in administration proceedings. Such expenses as are provided for in said proviso may be paid out of inherited moneys upon order of the county court of Osage county under the act of Congress without regard to the county court where the estate is being administered, or without any administration proceedings, upon proof of the death of the allottee. The act of Congress did not grant sole power and jurisdiction to the county court of Osage county, Okla., to administer the estates of deceased allottees of the Osage Tribe, but in clear language authorized and empowered **the county courts of the state of Oklahoma to administer the estates of such deceased allottees.**

Under section 1070, O. S. 1931, when the estate of the decedent is in more than one county, he having died out of the state, and not having been a resident thereof at the time of his death, the county court of that county in which application is first made for letters testamentary, or of administration, has exclusive jurisdiction of settlement of the estate. And, under section 1071, O. S. 1931, the county court of the county in which application is first made for letters testamentary or of administration in any of the cases mentioned in section 1070, shall have jurisdiction co-extensive with the state in the settlement of the estate of the decedent and the distribution of his real estate, and excludes the jurisdiction of the county court of every other county.

Without indication as to the degree of blood, the name of Alex Mudd appears on the Osage allotment roll as allottee No. 869, Roll No. 922, by virtue of which he received his pro rata share of Osage lands, an Osage headright, and a cash credit of $3,819.76 in the United States Treasury, commonly referred to as trust funds. Section 3 of an Act of Congress of March 3, 1921, 41 Stats. at Large, p. 1249, removed restrictions against alienation from allotted lands of certain Osages based upon degree of blood, provision for conclusive determination of which is found there. Pursuant to such legislation, the 1921 Osage roll was prepared whereon opposite the aforementioned numbers Alex Mudd appears as a full-blood. As a matter of fact, Alex Mudd was a Quapaw Indian with but little Osage blood. From the wording of such section and the view taken by this court of similar Five Tribes legislation, the 1921 roll is conclusive as to the degree of blood only in so far as the sale and distribution of allotted lands thereunder is concerned. Post Oak v. Lee, 46 Okla. 477, 149 P. 155. Under subdivision 7, section 2, of an Act of Congress of June 28, 1906, 34 Stats. at Large, 539, generally known as the Osage Allotment Act, and under date of November 14, 1916, said allottee was granted a certificate of competency which removed restrictions from all accumulated Osage moneys, except trust funds, and from all his Osage lands except homestead, which, with the approval of the Secretary of the Interior, he deeded to Genevieve Mudd during the year 1926. In addition to his own headright he inherited 1 7/12 Osage headrights, together with accompanying trust funds, all of said Osage trust funds with the approval of the Secretary of the Interior having been released to him with the exception of $2,178.60. By virtue of his certificate of competency he sold his surplus allotment for a fair price, and, in addition thereto, and also by virtue of his certificate of competency. the Department from Osage funds has released to him for unrestricted use the total sum of $159,844.64. On August 19, 1927, he executed a power of attorney to Jasper S. Martin, of Vinita, Okla., which said power was duly approved by the Secretary of the Interior and by virtue thereof the Department released to Mr. Martin the total sum of $30,524.52, which it is alleged was misappropriated by Mr. Martin, giving to Alex Mudd a cause of action against the said Jasper S. Martin and his sureties. By virtue of his Quapaw blood he inherited certain mining lands in Ottawa county, Okla., which together with the income therefrom are restricted and under the supervision of the Quapaw Indian Agency at Miami, Okla. Alex Mudd departed this life on or about the 27th day of August, 1931, at Colorado Springs, Colo., and left three purported wills of the respective dates of December 29, 1920, February 28, 1930, and August 26, 1931, and died seized of:

(1) Such lands and personal property, including his cause of action against the estate of Jasper S. Martin, deceased, as were obtained by him from funds and moneys subsequent to their release by the Department —wholly unrestricted.

(2) His interest in restricted, inherited Quapaw lands and the accumulated income therefrom—restricted.

(3) 2 7/12 Osage headrights—restricted.

(4) Osage trust funds in the sum of $2,178.60—restricted.

(5) September and December, 1931, accrued and accruing Osage annuity payments.

The Quapaw restricted lands and the restricted income therefrom descend to restricted heirs under and by virtue of the General Allotment Act, 24 Stats. at Large, 388, as supplemented by the Act of June 25, 1910, 36 Stats. at Large, 855, and further supplemented by the Act of February 14, 1913, 37 Stats. at Large, 678, through decree of examiner of inheritance with the approval of the Secretary of the Interior. Section 6 of the Osage Allotment Act, without expressly conferring jurisdiction on any particular tribunal, provided that estates of deceased Osages should descend to legal heirs according to the laws of the Territory of Oklahoma, or of the state in which the Osage Reservation might thereafter be incorporated, with certain minor exceptions not here material, and under and by virtue of section 8 of an Act of Congress of April 18, 1912, 37 Stats. at Large 86, provision was made for the disposing by will of an Osage estate according to the terms and conditions of such section, which reads:

"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the state of Oklahoma: Provided, That no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

Here Congress was only dealing with certain restricted property of members of the Osage Tribe of Indians. As to the unrestricted property, there seems to be no question but what the Osage Indian, mentally competent, might dispose of it by will or otherwise. It is conceded that Alex Mudd left estate subject to administration in Ottawa county. The proceedings to administer his estate were first commenced in Ottawa county, and we are of the opinion, and hold, that it is the duty of the custodian of the will to deliver the same to the county court of Ottawa county, being the county court having jurisdiction of the estate, or the custodian may deliver the same to the executor named therein. When an allottee of the Osage Tribe of Indians has died testate out of the state and was not a resident thereof at the time of his death, then,

under section 1069, O. S. 1931, his will must be proved and letters testamentary or of administration granted in the county where application for letters is first made. In the case of Schofield v. Melton, District Judge, 166 Okla. 64, 25 P. (2d) 279, we held that:

"An original proceeding in this court seeking a writ of prohibition is an appropriate remedy to prevent an intolerable conflict of jurisdiction between two inferior courts of equal jurisdiction."

The county court of Ottawa county having first acquired jurisdiction of the probate proceedings, it appears to us that the petitioner is clearly entitled to the relief prayed, and that a writ of prohibition should be granted as prayed, and it is so ordered.

CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. RILEY, C. J., absent.